HOSPITAL EMPLOYEES' DIVISION OF LOCAL 79, SERVICE
EMPLOYEES' INTERNATIONAL UNION, AFL-CIO v FLINT
OSTEOPATHIC HOSPITAL

OPINION OF THE COURT

1. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—HOSPI-
TALS—COLLECTIVE BARGAINING—BARGAINING UNIT.

The Michigan Employment Relations Commission's determina-
tion that the appropriate unit for both the hospital employees
represented by AFSCME and the hospital dietary employees
represented by SEIU is a hospital wide unit does not leave the
dietary employees represented by SEIU in limbo until the
expiration of the current collective bargaining agreement be-
tween AFSCME and the hospital; until expiration of that
agreement, the dietary employees, as the commission may
determine, may, with or without a self-determination election,
either become an addition to the AFSCME bargaining unit or,
as a separate temporary unit, bargain with the hospital for a
collective bargaining agreement extending not beyond the expi-
ration of the current AFSCME/hospital agreement.

2. LABOR RELATIONS—COLLECTIVE BARGAINING—BARGAINING UNIT—
EMPLOYMENT RELATIONS COMMISSION—APPEAL AND ERROR.

The appellate courts of Michigan will hesitate to substitute a
judicial judgment of the appropriate collective bargaining unit
for the Michigan Employment Relations Commission's determi-
nation, and will do so reluctantly and only upon a clear
showing of error.

SEPARATE OPINION

T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ.

3. LABOR RELATIONS—COLLECTIVE BARGAINING—EMPLOYMENT RELA-
TIONS ACT.

*A section of the Michigan employment relations act establishes*

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 48 Am Jur 2d, Labor and Labor Relations § 1200.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1087, 1090.
[3–5] 48 Am Jur 2d, Labor and Labor Relations §§ 443–445, 449, 491.

the general proposition that an employer has the duty to bargain collectively with representatives of its employees and this is an enforceable statutory obligation; but, an employer is not obligated to bargain collectively with every claimed representative of its employees because the obligation imposed by that section is to bargain collectively with employee representatives as defined in another section of that act which provides: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the employer" (MCLA 423.26, 423.30).

4. LABOR RELATIONS—COLLECTIVE BARGAINING—EMPLOYMENT RELATIONS ACT.

   The employer is under the duty to bargain collectively with the employees' representative, pursuant to a section of the Michigan employment relations act, if the representative meets these three criteria that the representative must be: (1) selected for the purpose of collective bargaining; (2) by a majority of the employees; and (3) in an appropriate unit (MCLA 423.26).

5. LABOR RELATIONS—LABOR MEDIATION BOARD—EMPLOYMENT RELATIONS COMMISSION—COLLECTIVE BARGAINING—BARGAINING UNIT.

   The Labor Mediation Board, now designated as Employment Relations Commission, is required to determine the appropriate unit for an election when confronted with choices to make between competing claims; but, the board's power to determine the appropriate unit is vested to insure the full rights of self-organization and collective bargaining to employees, and may not be used to defeat or destroy those rights.

6. LABOR RELATIONS—HOSPITALS—BARGAINING UNIT—EMPLOYER.

   Dietary employees of a hospital were regarded as an appropriate unit when they were described as the employees of a catering company, working at the hospital; the same employees, doing the same job at the same place and represented by the same union do not lose their classification as an appropriate bargaining unit merely because they find themselves working for a new employer.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and V. J. Brennan and Targonski, JJ.,

reversing in part, affirming in part, and remanding the Michigan Employment Relations Commission, Labor Relations Division. Submitted October 4, 1973. (No. 3 October Term 1973, Docket No. 54,470.) Decided December 18, 1973.

43 Mich App 237 reversed.

Plaintiff Hospital Employees' Division of Local 79, Service Employees' International Union, AFL-CIO, brought an unfair labor practice charge against defendant Flint Osteopathic Hospital for refusal to bargain.. Plaintiff and defendant petitioned for a representation election, defendant seeking to have intervenor, Local 1850, Council 29, American Federation of State, County and Municipal Employees, AFL-CIO, appointed its bargaining agent. Unfair labor charge and both petitions dismissed. Plaintiff appealed to the Court of Appeals on leave granted. Reversed in part, affirmed in part, and remanded for further proceedings. Defendant appeals. Reversed and remanded to Michigan Employment Relations Commission.

*White, Newblatt & Grossman, P. C.,* for plaintiff.

*Draper, Daniel, Ruhala & Seymour, P. C.,* for defendant.

Levin, J. MERC's determination that the appropriate unit for both the employees represented by AFSCME and the employees represented by SEIU is a hospital wide unit does not leave the dietary employees represented by SEIU in limbo until the expiration of the current collective bargaining agreement between AFSCME and the hospital. Until expiration of that agreement, the dietary employees, as MERC may determine, may, with or

without a self-determination election, either become an addition to the AFSCME bargaining unit or, as a separate temporary unit, bargain with the hospital for a collective bargaining agreement extending not beyond the expiration of the current AFSCME/hospital agreement.

The decision of the Court of Appeals overturning MERC's determination of the appropriate unit is reversed.[1] The appellate courts of this state will hesitate to substitute a judicial judgment of the appropriate unit for MERC's determination, and will do so reluctantly and only upon a clear showing of error.

Reversed and remanded to MERC for implementation of the rights of the dietary employees.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, and WILLIAMS, J.J., concurred with LEVIN, J.

T. E. BRENNAN, J.

BACKGROUND

On October 16, 1960, Flint Osteopathic Hospital entered into an agreement with a catering company known as The Prophet Co. By this agreement, Prophet undertook to operate a general catering service within the hospital. Prophet served both patients and non-patients, and was compensated on a cost-plus basis. The contract provided that after 90 days of operation the agreement could be terminated by either party upon 60 days written notice.

Prophet, on September 19, 1969, entered into a

---

[1] In *NLRB v Burns International Security Services, Inc,* 406 US 272; 92 S Ct 1571; 32 L Ed 2d 61 (1972), relied on by the Court of Appeals, the NLRB had found that the former bargaining unit was still the appropriate unit.

collective bargaining agreement with the plaintiff union, which will be designated here as SEIU. This collective bargaining agreement provided for the terms and conditions of employment for Prophet employees serving at the hospital. It was effective for 1 year until August 31, 1970, and year to year thereafter, unless terminated after written notice served 60 days prior to the anniversary thereof.

On February 27, 1970, the hospital entered into a collective bargaining agreement with the intervenor union, AFSCME. That agreement purported to establish the terms and conditions of work for hospital employees as described in a certain certification of representation made by the Labor Mediation Board, and dated July 3, 1969. That collective bargaining unit was described in the certification as follows:

"UNIT: All regularly scheduled full or part-time employees in the following classifications: orderlies, ward clerks, nurses aides, LPN's, PN's, surgical technicians, transporters, messengers, day care center aides, surgical maids, central supply employees, pulmonary functions technicians, inhalation therapy technicians, maids, porters, laundry employees, maintenance employees, laboratory and x-ray employees including technicians, physical therapy employees, storeroom and printshop employees but EXCLUDING: supervisors, registered nurses, graduate nurses, business office clerical employees, switchboard and information employees, admitting employees, surgical admitting employees, students in hospital training programs (PN's and ADN's), employees of subcontractors, x-ray clerical, lab clerical medical records employees, administrative clerical employees, contract employees, pharmacy employees and all other employees not specifically included above."

On June 3, 1970, the president of plaintiff union wrote to The Prophet Co.:

"In accordance with the collective bargaining agreement in effect between Service Employees' International Union, Local 79, AFL-CIO and The Prophet Company (Flint Osteopathic Hospital—Dietary employees), may this serve as official notification to you that we wish to reopen this contract for certain changes.

"We will contact you at a later date with specific changes."

Six days later, the following letter was sent by the hospital to Greyhound Food Management, Inc., successor to Prophet:

"The Board of Trustees of Flint Osteopathic Hospital authorized me at their June 4, 1970, meeting, to officially inform you that we will cancel our contract with the Prophet Food Company effective Saturday, August 15, 1970.

"Would you please inform us as soon as possible who the representative of the Prophet Food Company will be that we will work with in terminating the contract.

"The Board of Trustees has decided that the hospital will run their own dietary food service department. If you have any questions please contact me."

On June 22, 1970, SEIU's representative wrote to the hospital, seeking to open negotiations directly with the hospital:

"Due to the fact that as of August 15, 1970, your Hospital will be the employer for the employees who are members of Service Employees International Union, Local 79, AFL-CIO, of the Dietary Department of Flint Osteopathic Hospital, and in accordance with the collective bargaining agreement of our current contract, we would like to inform you that this will serve as official notification to you that we wish to reopen this contract for certain changes."

The hospital's reply came two days later:

"Service Employees International Union, Local 79, AFL-CIO does not have a collective bargaining agreement with Flint Osteopathic Hospital. The persons you refer to are not employees of Flint Osteopathic Hospital."

## THE LITIGATION

At this point, the plaintiff union commenced an action in the Circuit Court for Genesee County, filing its complaint on July 27, 1970, against the hospital, alleging that the hospital had declared all dietary positions to be open, and praying for an injunction restraining the hospital from treating the employees of the plaintiff union as having been terminated.

On October 6, 1970, the circuit court entered an injunctive order restraining the hospital from changing the wages, hours, and terms and conditions of employment of the members of plaintiff union, and from discharging such employees. This circuit court action is not the subject of the present appeal.

After commencing the circuit court action, SEIU sought the intervention of the Michigan Employment Relations Commission, directing this telegram to the Labor Mediation Board on August 13, 1970:

"This is to give notice of a dispute under the provisions of MCLA 423.13A(3) between Hospital Employees' Division of Local 79, Service Employees' International Union, AFL-CIO and the Flint Osteopathic Hospital, a Michigan Corporation. The dispute is as to whether a collective agreement entered into between the aforesaid union and the Prophet Foods Company is applicable to and bind [sic] upon the Flint Osteopathic Hospital. On behalf of the union, I ask that the board intervene and investigate in accordance with the applicable law."

That request was followed with an August 20, 1970, charge of unfair labor practice filed with MERC by plaintiff union against the hospital, based upon the latter's refusal to recognize the union as the bargaining agent of its dietary employees.

On October 8, 1970, the hospital countered by requesting MERC to conduct a representation election. That petition listed plaintiff SEIU as a claimant of recognition, and identified intervenor AFSCME as the "recognized or certified bargaining agent". Attached to that petition was an exhibit purporting to be a copy of the July 3, 1969, Certification of Representation, which compares identically with the copy of the same certification attached to the hospital's contract with AFSCME, except for one curious addition. The copy attached to the petition for election contained the words "dietary employees" as an included classification.

The hospital's petition for a representation election resulted in a letter from MERC on the same day—October 8, 1970—belatedly replying to SEIU's August 13, 1970, telegram, and advising that since the hospital's petition claimed a bargaining unit which included "dietary employees", no action would be taken until disposition of the election petition.

On October 27, 1970, a hearing was convened at Flint before a hearing examiner of the MERC, to consider SEIU's charge of unfair labor practices and the hospital's petition for representation election.

Sometime after the conclusion of that hearing, specifically on January 12, 1971, the examiner filed his findings of fact and conclusions of law.

The examiner concluded that the hospital was not the alter ego of Prophet, and therefore not

obliged to bargain with SEIU, and further concluded:

"AFSCME also denied that it sought to represent the dietary employees. AFSCME would rather leave things as they are and have two bargaining units of Hospital employees—the dietary department and the rest of the (overall) bargaining unit that AFSCME now represents. The RM Petition For Election should be dismissed as to AFSCME because they do not seek to represent the overall bargaining unit to include dietary employees, as the Employer claims in his Petition for Election.

"The dietary employees find themselves in an unusual position. The Charging Party does not represent them. AFSCME does not want to represent them, and there is no Petition For Election by any individual organization seeking to represent them. There is no question concerning representation before this Commission and the Petition for Election should be dismissed in its entirety."

Taking the examiner at his word, plaintiff union filed, on January 19, 1971, a petition for representation election, limited to dietary employees.

Additionally, SEIU filed exceptions to the trial examiner's conclusion, and the matter was then considered by the Michigan Employment Relations Commission. The commission's decision and order issued on June 15, 1971. It denied the plaintiff SEIU's petition for representation election because the dietary employees were not an appropriate bargaining unit, and it denied the similar petition of the hospital for a hospital-wide election because of a subsisting agreement covering some of the employees in that unit.

The commission said:

"It has been the long-established law of Michigan that bargaining units of employees for the purpose of collective bargaining under LMA should be the largest

unit wherein the employees of one employer have a community of interest. *Hotel Olds v Michigan Labor Mediation Board,* 333 Mich. 387, 53 N.W. 2d 302, 30 LRRM 2156 (1952).

"Under the principle of law established by *Olds,* the ultimate unit in the certification of Respondent's employees as being represented by the Intervenor would have included the non-supervisory employees of the Dietary Department. They were not included, however, because the dietary workers at that time were not employees of the Respondent and were certified by the National Labor Relations Board as being employees of Prophet Foods Company represented by the Charging Party.

"Consistent with *Olds,* these employees should, if possible, become a part of the unit now represented by the Intervenor if they wish to be represented by a union. For that reason, the petition of the Charging Party of January 9, 1971, seeks an election in an inappropriate unit and should be dismissed.

"The Respondent's petition for an election in a unit consisting of all of its non-professional, non-supervisory employees, including dietary employees, involves a unit comprising the largest number of employees of the Respondent with a community of interest, but includes all of the employees of the certified unit now represented by the Intervenor. There is a current collective bargaining agreement between the Intervenor and the Respondent covering wages, hours and working conditions of employees in that unit.

"The unit now represented by the Intervenor, although not the ultimate unit, was an appropriate unit at the time of certification because the dietary employees were then represented by the Charging Party and were not employees of the Respondent. *Genesee County Drain Commission,* 1970 MERC L. Op. 859.

"Nor does this employer election petition conform to Section 27 of LMA because it does not allege that a claim has been made by 'one or more individuals for a labor organization to represent the employees in the unit.' MERC Rules and Regulations, Rule 41(2)(i). Moreover, the petition is defective because it attempts to

establish a unit composed of some employees who are
not now represented by a collective bargaining repre-
sentative and some who are represented by the Interve-
nor in an appropriate unit with a current collective
bargaining agreement covering the wages, hours and
working conditions of those employees.

"Section 29, LMA (M.S.A. 17.454(30)) *[sic],* provides:

"' * * * No election shall be directed in any bargain-
ing unit or subdivision thereof where there is in force
and effect a valid collective bargaining agreement
which was not prematurely extended which is of fixed
duration * * * .' "

The philosophy of the commission is well stated
in a concluding paragraph of its decision:

"The principles enunciated in those cases are applica-
ble here. The certification of a bargaining unit which is
appropriate but not the ultimate unit should be
changed to the ultimate unit when the opportunity
arises, whether it results from inadvertence, historical
accident or for the reasons existing here."

In effect, MERC concluded that the dietary em-
ployees were in limbo, unable to be represented by
the union of which they were members, and to
which they paid dues, and equally unable to par-
ticipate in a hospital-wide election to determine
whether their union or some other union should
be recognized as their bargaining agent.

On appeal, the Court of Appeals reversed the
commission's dismissal of unfair labor practice
charges, holding that the hospital had a duty to
bargain with the plaintiff, and concluding that the
dietary employees were an appropriate unit for
such purposes.

Five sections of the Michigan employment rela-
tions act need to be considered: MCLA 423.26,
423.27, 423.28, 423.29, and 423.30; MSA 17.454(28),
17.454(29), 17.454(30), 17.454(31), and 17.454(32).

Section 30 establishes the general proposition that an employer has the duty to bargain collectively with representatives of its employees. This is an enforceable statutory obligation.

But, an employer is not obligated to bargain collectively with every claimed representative of its employees. The obligation imposed by § 30 is to bargain collectively with employee representatives "as defined in section 26".

Section 26 provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the employer:".

Analysis of § 26 reveals the following criteria, upon which to determine whether a representative is one with whom an employer must bargain collectively:

The representative must be:

1) selected for the purpose of collective bargaining;

2) by a majority of the employees; and

3) in an appropriate unit.

If the representative meets these three criteria, the employer is under the duty to bargain collectively with the representative.

Sections 27, 28, and 29 neither add to nor detract from the obligation of the employer to bargain as declared under § 30, nor do they limit the definition of a representative as contained in § 26.

Sections 27, 28, and 29 are all procedural. They

vest the board[1] with jurisdiction to order represen-
tation elections under certain circumstances, and
to decide the appropriateness of a bargaining unit.
These procedural sections are designed to provide
a remedy for the protection of the right declared
in § 26 and for the enforcement of the duty im-
posed by § 30.

MCLA 423.8; MSA 17.454(8) defines the general
right of collective bargaining. It is in many re-
spects merely declarative of constitutional rights
of free association and freedom to contract:

"It shall be lawful for employes, to organize together
or to form, join or assist in labor organization, to
engage in lawful concerted activities for the purpose of
collective negotiation or bargaining or other mutual aid
and protection, or to negotiate or bargain collectively
with their employers through representatives of their
own free choice."

Section 28 provides as follows:

"The board shall decide in each case, in order to
insure employees the full benefit of their right to self-
organization, to collective bargaining and otherwise to
effectuate the policies of this act, the unit appropriate
for the purpose of collective bargaining as provided in
section 9e."

Section 9e, referenced therein, states:

"The board, after consultation with the parties, shall
determine such a bargaining unit as will best secure to
the employees their right of collective bargaining. The
unit shall be either the employees of 1 employer em-
ployed in 1 plant or business enterprise within this
state, not holding executive or supervisory positions, or
a craft unit, or a plant unit, or a subdivision of any of
the foregoing units: Provided, however, That if the

[1] Board is now designated as Employment Relations Commission
(1969 PA 181; MCLA 423.2[c]; MSA 17.454[2]).—REPORTER.

group of employees involved in the dispute has been recognized by the employer or identified by certification, contract or past practice, as a unit for collective bargaining, the board may adopt such unit."

We find no reference in the statute to the phrase "ultimate bargaining unit".

When confronted with choices to make between competing claims, the board is required to determine the appropriate unit for an election. But, the board's power to determine the appropriate unit is vested to insure the full rights of self-organization and collective bargaining to employees, and may not be used to defeat or destroy those rights.

The dietary employees of the hospital were regarded as an appropriate unit when they were described as the employees of Prophet, working at the hospital.

The same employees, doing the same job at the same place and represented by the same union do not lose their classification as an appropriate bargaining unit merely because they find themselves working for a new employer.

The cause will be remanded to MERC for the purpose of granting plaintiff's petition dated January 19, 1971, and conducting the election requested therein.

No costs, a public question being involved.

SWAINSON and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.