INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,
UAW-TECHNICAL, OFFICE, PROFESSIONAL DEPARTMENT v
CITY OF STERLING HEIGHTS

Docket No. 95836. Submitted June 11, 1987, at Detroit. Decided
September 9, 1987.

International Union, United Automobile, Aerospace and Agricul-
tural Implement Workers of America, UAW-Technical, Office,
Professional Department filed a petition with the Michigan
Employment Relations Commission seeking to represent cer-
tain employees of the City of Sterling Heights in separate
bargaining units for supervisory and nonsupervisory personnel.
The UAW and the city agreed to exclude the city manager, the
deputy city manager, the fire chief and the chief of police from
the supervisory bargaining unit because of their executive
status. MERC subsequently determined that all of the remaining
supervisory employees, with the exception of the city assessor,
the city clerk and the city treasurer, could be included in the
supervisory bargaining unit. The city appealed from this deter-
mination, claiming that the finance director, the director of city
development, the director of public services, the library director
and the director of parks and recreation should have been
excluded from the supervisory bargaining unit on the basis of
their executive status. The UAW cross-appealed the exclusion of
the city assessor from the supervisory bargaining unit.

The Court of Appeals held:

1. The executive exclusion is based upon MERC's power to
delineate appropriate bargaining units and it prevents employ-
ees in executive positions from being included in a bargaining
unit which consists of nonexecutive employees.

2. MERC, in determining whether a particular job title should
be accorded executive status, has expanded its definition of

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1787 et seq.

Union organization and activities of public employees. 31 ALR2d
1142.

Rights of collective action by employees as declared in § 7 of
National Labor Relations Act (29 USCA § 157). 6 ALR2d 416.

"executive" from a policy-making head of a major department to an employee who exercises broad discretion, even if it is only in regard to effectuating management policy. Factors relevant to executive status include the scope of responsibility, extent of authority and interchangeability of function with other executives.

3. The record in this case, when considered as a whole, lacks competent, material and substantial evidence in support of MERC's findings that the finance director, the director of city development and the director of public services should not be excluded from the supervisory bargaining unit on the basis of executive status. However, the record supports MERC's findings that the director of parks and recreation and the library director may be included in the supervisory bargaining unit. Finally, MERC correctly determined that the city assessor should be excluded from the supervisory bargaining unit on the basis of executive status.

Affirmed in part and reversed in part.

1. LABOR RELATIONS — PUBLIC EMPLOYEES — BARGAINING UNITS — APPEAL.

A determination by the Michigan Employment Relations Commission of the appropriate units within which public employees may organize for the purpose of collective bargaining will not be overturned on appeal where it is supported by competent, material and substantial evidence on the record considered as a whole (MCL 423.23; MSA 17.454[25]).

2. LABOR RELATIONS — EXECUTIVE STATUS.

Factors examined by the Michigan Employment Relations Commission in determining whether a particular job title should be accorded executive status include the scope of responsibility, extent of authority and interchangeability of function with other executives.

*Jordan Rossen* and *Nancy Schiffer*, for appellee.

*Riley & Roumell* (by *Stanley C. Moore III*), for appellant.

Before: SHEPHERD, P.J., and M. J. KELLY and C. M. FORSTER,* JJ.

M. J. KELLY, J. Respondent, City of Sterling

* Circuit judge, sitting on the Court of Appeals by assignment.

Heights, appeals the decision by the Michigan State Employment Relations Commission that includes five supervisory positions in a residual supervisory bargaining unit. Petitioner, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW-Technical, Professional Department (UAW), cross-appeals the exclusion of the city assessor from the residual supervisory bargaining unit. We affirm in part and reverse in part.

The city, with a population of 115,000, is governed by an elected city council that appoints a city manager. The city has approximately six hundred employees, and prior to this action all but fifty-seven were represented by nine separate bargaining units.

The UAW petitioned for two residual bargaining units, one supervisory and one nonsupervisory, to cover all unrepresented employees of the city. This case only concerns the inclusion and exclusion of certain positions from the residual supervisory bargaining unit.

Prior to the MERC determination, the parties agreed to exclude from the residual supervisory bargaining unit the following four positions because of their executive status: the city manager, the deputy city manager, the fire chief, and the chief of police. Initially, the city argued that, except for the chief zoning inspector and the chief engineering inspector, all other unrepresented supervisory employees of the city held executive positions and should be excluded from any bargaining unit. MERC disagreed and included all of the remaining supervisory employees, with the exception of the city assessor, city clerk and city treasurer, in the residual supervisory bargaining unit.

On appeal the city has limited its claim of error

to the inclusion of five positions in the residual supervisory bargaining unit. These are: the finance director, the director of city development, the director of public services, the library director and the director of parks and recreation. The city maintains that these five positions fall into the executive exclusion and that MERC's determination that they were supervisory and includable in the residual supervisory bargaining unit was not supported by competent, material and substantial evidence on the record as a whole.

The executive exclusion is based upon MERC's power to delineate appropriate bargaining units and it prevents employees in executive positions from being included in a bargaining unit which consists of nonexecutive employees. See *Detroit Bd of Ed v Local 28, Organization of School Administrators & Supervisors, ALF-CIO,* 106 Mich App 438; 308 NW2d 247 (1981), lv den 413 Mich 859 (1982), MCL 423.213; MSA 17.455(13) and MCL 423.9e; MSA 17.454(10.4).

Determination of a collective bargaining unit is a finding of fact, not to be overturned by this Court if it is supported by competent, material and substantial evidence. See *Michigan Educational Support Personnel Ass'n v Southfield Public Schools,* 148 Mich App 714, 717; 384 NW2d 768 (1985); *Local 128,* [sic, *1282*] *AFSCME v Ishpeming,* 155 Mich App 501, 508; 400 NW2d 661 (1986), lv den 428 Mich 902 (1987); MCL 423.23; MSA 17.454(25).

MERC has adopted a case-by-case approach in determining whether the executive exclusion applies. *Detroit v Detroit Dep't of Transportation Foreman's Ass'n,* 109 Mich App 141, 143; 311 NW2d 319 (1981), lv den 413 Mich 902 (1982). In *DOT Foreman's Ass'n* the Court noted the fact that MERC had expanded its definition of executive

"from applying to 'policy making heads of major departments' to include 'an employee who exercises broad discretion, even if it is only in regard to *effectuating* management policy.'" *DOT Foreman's Ass'n, supra* at 143. See also *Local 28, OSAS, supra* at 444. Factors to be examined in reaching a determination of executive status include the scope of responsibility, extent of authority and interchangeability of function with other executives. *Id.* at 444.

When the standard of review is that findings of fact must be supported by competent, material and substantial evidence on the record as a whole, a thorough judicial review of the administrative decision was intended:

> [A] review which considers the whole record— that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. [*MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).]

Mindful of the appropriate standard of review, a qualitative and quantitative evaluation of the evidence presented on each of the disputed positions has been undertaken.

FINANCE DIRECTOR

The parties jointly introduced into evidence an

administrative ordinance referred to as the Economic Development Corporation. That ordinance provides that the director of finance is directly responsible to the city manager for the functions of the department of city finance. The EDC also provides that the director of finance shall supervise the office of city finance, the office of city treasurer and the office of city assessor. Both the city treasurer and the office of city assessor were found by the commission to be of executive status despite the fact that they were subordinate to the office of finance director.

The 1985-86 budget, introduced into evidence by the city, provides that the finance department, for which the finance director is responsible, develops, monitors and maintains records and an accounting system for all financial transactions relating to the city's operations. The primary duty of the finance director is to search and recommend ways to keep the city on sound financial footing. Duties of the finance director also include: assisting in the preparation of the city budget, maintaining all financial records of the city, coordinating and supervising the activities of the city assessor's and the city treasurer's office, regularly reviewing and forecasting revenues, expenses, cash flow, capital assets for budgeting control and possible investment of idle city assets, and procurement and control of all insurance for the city. The finance director's signature is one of two signatures required on all city checks processed.

In assessing the factors to be considered for executive exclusion, the finance director's scope of responsibility is extensive. The person who occupies that position must maintain all financial records of the city, procure all the city's insurance needs, and assist in preparing the city budget. The extent of the finance director's authority is also

considerable. Both the city assessor and the city treasurer report to the director of finance. This evidences the element of interchangeability of this position with other executive positions.

Based on a quantitative and qualitative review of the evidence as a whole, we find that the finance director is an executive employee who should be excluded from the residual supervisory bargaining unit. Because of the meager and limited evidence refuting the finance director's executive status, the commission erred in concluding that there was competent, material and substantial evidence to support the inclusion of this position in the bargaining unit.

### DIRECTOR OF CITY DEVELOPMENT

The EDC provides that the director of city development is directly responsible to the city manager for the functions of the department of city development. The EDC further provides that the director of city development shall be responsible for providing general supervisory direction, control and coordination of the various functions of the office of engineering, the office of planning, and the office of building services.

The 1985-86 budget provides that the director of city development is responsible for providing general direction, control, and coordination of the engineering, planning, building and zoning functions of the city. The department also acts as liason for the city with regional agencies and promotes development of business and industrial growth in the city.

The primary responsibility of the director of city development is the supervision and coordination of the engineering, building, planning and zoning departments. The duties of the director of city

development include: providing general supervision and coordination with architects, engineers, and contractors responsible for the construction of city projects, coordinating with developers, contractors and builders for inclusion of required city services and compliance with the city master plans with regard to development; serving as secretary of the EDC, receiving and assisting review of tax abatement applications, and meeting and coordinating with other agencies including the Macomb County Road Commission, Macomb County Public Works Commission, Michigan Department of Transportation, Federal Highway Administration, Department of Natural Resources and neighboring municipalities.

In assessing the relevant factors used to determine executive status, it is apparent that this position has a broad range of responsibilities, with its supervision of the city engineering, planning, zoning and building departments. It is also apparent that this position entails a great deal of authority in that the director is the principal contact for all development activities, supervises and coordinates architects, engineers and contractors responsible for various construction projects and coordinates the activities of the EDC. Testimony of the former acting city manager also established that, during the period when he was unavailable and there was no deputy city manager, the director of city development was one of two department heads asked to take charge.

Because scant evidence was elicited to support it, the finding of fact that the director of city development was not within the executive exclusion was not supported by competent, material and substantial evdience on the record as a whole.

DIRECTOR OF PUBLIC SERVICES

The EDC provides that the director of public services is directly responsible to the city manager for the functions of that department. The EDC also provides that the director of public services shall supervise the office of public works, the physical plant of the city, capital improvement programs and agreements and grant applications. The EDC states that the superintendent of public works, who controls and supervises all offices and employees of the DPW, is subordinate to the director of public services.

The typical duties of the director of public services include: managing the public works department; supervising the right-of-way agent by establishing policy and procedure for acquiring easements and rights of way, reviewing, initiating and coordinating public improvement projects, and preparing drafts and reviewing varied agreements, contracts and deeds with developers, builders, corporations and other public agencies. The director of public services also sits on the Macomb County Solid Waste Commission.

On review of the record as a whole, we find that the director of public services possesses a wide range of authority and responsibility over a major department that is responsible for necessary city services. The director is a civil engineer with extensive responsibility over public works contracts and for establishing policy and procedure for acquiring easements and rights of way. Excluding captains in the police force, the director of public services is the third highest paid city employee, and reports directly to the city manager. Based on a qualitative and quantitative review of the evidence as a whole, this position should have

been excluded from the residual supervisory bargaining unit.

### DIRECTOR OF PARKS AND RECREATION

The EDC provides that the director of parks and recreation is under the general direction of the deputy city manager who, in turn, reports to the city manager. Typically, this position directs the activities of permanent and seasonal staff and is responsible for the utilization of the city parks, properties and buildings and other public and private facilities that may be used for recreational activity. There is no evidence to suggest that the director effectuates policy with broad and substantial discretion. The major responsibilities appear to be overseeing the general recreational program. The decision by the commission to include this position in the residual supervisory bargaining unit was supported by competent, material and substantial evidence on the record as a whole.

### LIBRARY DIRECTOR

The library director or city librarian is under the general direction of the city manager and directs the operation of the library and its employees in cataloging and purchasing books, materials and magazines and in providing service to city residents. Essentially, the librarian oversees and participates in the day-to-day activities of the library. The general responsibilities of the library director do not reflect that this position acts with a substantial degree of autonomy and, moreover, there is a library board which acts in an advisory capacity. The decision of the commission to include this position in the residual supervisory bargaining unit was supported by competent, material and substantial evidence on the record as a whole.

CITY ASSESSOR

In its cross-appeal the UAW contends that the commission incorrectly excluded this position from the residual supervisory bargaining unit.

The city assessor acts under the general supervision of the deputy city manager and administers and directs the real and personal property assessment function to assure equitable taxation in the city. This position also develops and supervises the implementation of related policies and procedures. The city assessor is appointed by the city manager and confirmed by the council. He controls and supervises all officers and employees of the city subject to the supervision of the finance director and city manager. The city assessor is considered an administrative officer of the city. In addition, the city assessor determines the appropriate method to employ in assessing property. The city assessor's responsibilities in assessing real and personal properties provide a great portion of the city's revenues. The job description for this position expressly states that the assessor is involved in the development and supervision of the implementation of related policies and procedures. Based on this review of the evidence as a whole we find that the decision of the commission excluding this position from the residual supervisory bargaining unit was supported by competent, material and substantial evidence.

The decision of MERC is affirmed in part and reversed in part.