MICHIGAN EDUCATION ASSOCIATION v
ALPENA COMMUNITY COLLEGE

Docket No. 107926. Decided May 19, 1998. On application by the peti-
tioner for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the judgment of the Court of Appeals and reinstated
the decision of the Employment Relations Commission.

The Michigan Education Association, the collective bargaining repre-
sentative for a unit of nonsupervisory office personnel at Alpena
Community College, petitioned the Employment Relations Commis-
sion to combine certain unrepresented nonsupervisory support
staff with its existing unit. The commission directed that an elec-
tion be conducted to determine whether the group wanted to join
the existing unit. The Court of Appeals, SAWYER and R. M. PAJTAS, JJ.
(WHITE, P.J., dissenting), reversed the decision of the commission in
an unpublished opinion per curiam (Docket No. 180695). The MEA
seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and
Justices BRICKLEY, CAVANAGH, BOYLE, KELLY, and TAYLOR, the Supreme
Court held:

The findings of the Employment Relations Commission were
supported by competent, material, and substantial evidence.

Decisions of the commission regarding residual bargaining units
generally are to be given deference under the competent, material,
and substantial evidence standard. Gathering up remaining employ-
ees into a residual unit will nearly always involve joining employ-
ees with diverse job descriptions. The factual determination
whether the proposed residual unit is excessively diverse lies with
the commission, and it will not be disturbed if it is supported by
competent, material, and substantial evidence. In this case, the
decision of the commission was sound. While the residual group
contains persons with varying responsibilities and compensation
levels, there is no sign that the statutory purposes or the goals of
collective bargaining would be frustrated by formation of the unit
approved by the commission.

Justice WEAVER, concurring, stated that it is correct to affirm the
MERC decision that an election may be conducted to determine
whether the residual employees want to join the existing clerical

employee bargaining unit. A thorough review of the record reveals that the reliance by the MERC on the factors it considered was reasonable, and it is not the Court's place to reverse the MERC's decision.

Reversed.

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Kathryn A. VanDagens, Kathleen Corkin Boyle,* and *William F. Young*), for the respondent-appellant.

*Thrun, Maatsch & Nordberg, P.C.* (by *Donald J. Bonato*), for the petitioner-appellee.

PER CURIAM. The Michigan Employment Relations Commission ordered an election to determine whether a group of unrepresented Alpena Community College employees should be represented by the collective bargaining representative of an existing unit at the college. The Court of Appeals reversed the election order, but we reinstate the decision of the MERC.

I

The Michigan Education Association is the collective bargaining representative for a unit of nonsupervisory office personnel at Alpena Community College. Building service employees, including custodians and maintenance workers, are represented by a separate union. It appears from the record that a third bargaining unit exists for Alpena Community College faculty.

As of September 1993, approximately thirty employees remained outside the three bargaining units. This residual group was a diverse collection of unrepresented nonsupervisory support staff. In the course of its decision on this matter, the MERC provided a roster of the positions held by these persons:

The petition, as supplemented by the record, identified the following positions, some of which are part-time or combined positions, or held by more than one employee, as being part of the proposed residual group: health fitness/activities technician; evening college technician; bookstore manager; developmental studies technician; library technician; volunteer coordinator; admission/activities technician; administrative assistant; mail processing/distribution technician; volunteer center coordinator; youth corps program coordinator, and service learning coordinator; volunteer center coordinator; data processing laboratory technician; senior parking attendant; tutor coordinator/technician; biology lab assistant; toolcrib person-automotive or machine tool; assistant bookstore manager; learning resource center (LRC) media technician; director of public information; consultant-resource/foundation development; administrative technician, upward-bound student advocate; developmental studies technician; financial aid and student services technician; switchboard operator; art technician; and placement coordinator. The petition also includes the added positions of administrative technician-Huron Shores TLC; administrative technicians, economic development (Iosco County); job development specialist; and student coordinator. [1994 MERC Lab Op 955, 960.]

In a September 1993 petition, the MEA asked the MERC to "accrete" the residual unit to the existing MEA unit of clerical employees. That is, the petition sought an election among the residual group to determine whether those persons wanted to join the existing unit and be represented by the MEA.

After an evidentiary hearing, the MERC ruled in favor of the MEA, directing that the election be conducted.[1]

---

[1] The MERC excluded a small number of employees from the proposed residual bargaining unit, on the grounds that they were supervisory or confidential employees.

The Court of Appeals stayed the election[2] and denied the MEA's motion to affirm.[3] The Court then reversed the decision of the MERC.[4] Judge HELENE N. WHITE dissented.

The MEA has applied to this Court for leave to appeal.

II

Where the bulk of an organization's employees are formed into several collective bargaining units, leaving behind a handful of unrepresented employees, it is quite foreseeable that the residual group will be a scattering of persons with miscellaneous duties. So it is in this case.

In such a situation, the MERC faces a tension between two competing considerations as it fulfills its statutory obligation to determine a proper bargaining unit.[5] One is the principle of "community of interest,"

---

[2] Order of the Court of Appeals, entered January 18, 1995 (Docket No. 180695), lv den 448 Mich 911 (1995).

[3] Order of the Court of Appeals, entered April 18, 1995 (Docket No. 180695).

[4] Unpublished opinion per curiam of the Court of Appeals, issued November 8, 1996 (Docket No. 180695).

[5] The statute provides:

The commission, after consultation with the parties, shall determine such a bargaining unit as will best secure to the employees their right of collective bargaining. The unit shall be either the employees of 1 employer employed in 1 plant or business enterprise within this state, not holding executive or supervisory positions, or a craft unit, or a plant unit, or a subdivision of any of the foregoing units. If the group of employees involved in the dispute was recognized by the employer or identified by certification, contract or past practice, as a unit for collective bargaining, the commission may adopt that unit. [MCL 423.9e; MSA 17.454(10.4).]

The commission shall decide in each case, in order to insure employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this

which calls for employees to have shared interests
with others in their bargaining unit. The opposing
consideration is that collective bargaining units
should be reasonably large to avoid a proliferation of
fragmented bargaining units.

In *Hotel Olds v State Labor Mediation Bd*, 333
Mich 382, 387; 53 NW2d 302 (1952), we adopted this
concise statement from an earlier Massachusetts
case:[6]

> "In designating bargaining units as appropriate, a primary
> objective of the commission is to constitute the largest unit
> which, in the circumstances of the particular case is most
> compatible with the effectuation of the purposes of the law
> and to include in a single unit all common interests."

Elaborating on the analysis to be employed by the
MERC, the Court of Appeals said this in 1990:

> In designating appropriate bargaining units, the commis-
> sion's primary objective is to constitute the largest unit
> which, under the circumstances of the case, is most com-
> patible with the effectuation of the purposes of the law and
> includes in a single unit all common interests. *Mich Ass'n of
> Public Employees v AFSCME Council 25*, 172 Mich App
> 761, 765; 432 NW2d 748 (1988), quoting *Hotel Olds v Labor
> Mediation Bd*, 333 Mich 382, 387; 53 NW2d 302 (1952). Con-
> sistent with this objective, the commission's policy is to
> avoid fractionalization or multiplicity of bargaining units.
> *Ass'n of Public Employees, supra,* 765. The touchstone of
> an appropriate bargaining unit is a common interest of all
> its members in the terms and conditions of their employ-

---

act, the unit appropriate for the purposes of collective bargaining
as provided in [MCL 423.9e; MSA 17.454(10.4)]. [MCL 423.28; MSA
17.454(30).]

[6] *Salem Hotel Corp v Hotel & Restaurant Workers, Local 290, AFL*, 19
LRRM 1245 (1946).

ment that warrants inclusion in a single bargaining unit and the choosing of a bargaining agent. *Id*. This Court abides by the commission's policy to constitute the largest bargaining unit compatible with the effectuation of the PERA. *Id*., 765-766. [*Muskegon Co Professional Command Ass'n v Muskegon Co*, 186 Mich App 365, 373-374; 464 NW2d 908 (1990).]

In the present case, the MERC determined that the proposed residual unit was appropriate, and directed that the election be held. It outlined the principles stated in *Hotel Olds* and *Muskegon Co Professional Command Ass'n*, and noted its own longstanding preference for broad units of support personnel in school cases,[7] before concluding:

---

[7] The MERC explained:

This Commission has always preferred broad units of support-type employees, and has found a community of interest among such employees, wherever prior bargaining history or the agreements of the parties do not prevent such findings. For example, compare *Dearborn Public Schools*, 1990 MERC Lab Op 513, 516-518 (refusal to sever clericals from broad noninstructional unit); *Waverly Comm Schools*, 1989 MERC Lab Op 819, 821 (clericals found to have community of interest with food service employees); *Forest Hills PS*, 1989 MERC Lab Op 781, 785 (food service combined with custodial-maintenance); *Farwell Area Schools*, 1986 MERC Lab Op 671, 673, and *Morley-Stanwood Comm Schools*, 1985 MERC Lab Op 752, 753 (presumed appropriateness of broad nonteaching, nonclerical unit); *Houghton Lake Comm Schools*, 1980 MERC Lab Op 603, 605 (bus employees combined with custodial-maintenance); with *South Redford School Dist*, 1966 MERC Lab Op [160] 162-163 (refusal to exclude food service employees from nonteaching unit); and *Union School Dist of Jackson*, 1966 MERC Lab Op 30, 32-35 (refusal to permit craft severance). As illustrated by the above cases, the Commission has always found instructional units separate from support, auxiliary, or noninstructional employees. See also *Lansing School Dist*, 1989 MERC Lab Op 160, 167 (refusal to sever hearing interpreters from paraprofessional unit and place with teaching employees). To further the policy of favoring the broader unit, the Commission will in appropriate cases permit consolidation of separate units of support or nonteaching employees, as in *Van Buren PS*, 1990 MERC Lab Op 691, 694-695.

Although not all employees in the proposed unit have similar duties, skills, or educational qualifications, there are similarities in these areas among individual positions. The fact that salaries and benefits vary among the positions sought is not sufficient to destroy their community of interest. *Washtenaw Community College*, 1993 MERC Lab Op 781, 790-791. The employees all work on the Employer's main or auxiliary campuses, and the Employer's organization chart demonstrates a centralized management system. Under *Hotel Olds, supra,* we are required to find appropriate the single largest group of employees who share a community of interest. This rule is for the benefit of employers, since it minimizes the fragmentation of units, prevents units based on extent of organization, and eliminates problems associated with multiple bargaining obligations. See *Livonia Public Schools*, 1988 MERC Lab Op 1068, 1075-1081; and 1989 MERC Lab Op 190, 192-193. We find that the unit sought by Petitioner satisfies this requirement. We conclude, therefore, that the residual group in this case, all nonsupervisory, nonfaculty employees excluded from existing units, may be accreted to the existing clerical unit to form a single all-college unit. [1994 MERC Lab Op 967.]

In its majority opinion, the Court of Appeals agreed with Alpena Community College that the employees "do not enjoy a community of interest." The majority explained:

Respondent notes that the employees have different duties, educational requirements, pay and benefits. While we recognize the MERC policy towards achieving the largest compatible bargaining units, we must agree with respondent that the employees sought to be accreted are simply too diverse to be considered to have a community of interest. A mere reading of the job titles demonstrates this. They

---

Thus, we reject the position of the College that the unit sought in this case is too broad or diverse and does not share a community of interest. [1994 MERC Lab Op 966-967.]

work in a variety of different areas of the college in numerous different tasks. Some are technicians, while others are managers and directors. There are administrative support employees, student activities employees, bookstore employees, and even parking lot employees. The only commonality we see among these employees is that they have the same employer. Accordingly, we conclude that the trial court erred in its conclusion. See *Muskegon Co Professional Command Ass'n v Muskegon Co*, 186 Mich App 365; 464 NW2d 908 (1990).

Writing in dissent, Judge WHITE quoted at length from the MERC opinion, noting that Alpena Community College had variously argued below that the proposed unit was both too narrow and too broad, though the college had not proposed an alternative unit. Accepting the conclusions reached by the MERC, Judge WHITE wrote that the "MERC's determination prevented further fragmentation and the leaving behind of even smaller groups of unrepresented employees, and was appropriate under the circumstances."

III

Appellate review of a determination by an administrative agency is limited. The Court of Appeals has correctly identified the standard of review:

Determination of a collective bargaining unit is a finding of fact, not to be overturned by this Court if it is supported by competent, material and substantial evidence. [*Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers v Sterling Heights*, 163 Mich App 8, 11; 413 NW2d 716 (1987) (citations omitted).]

Elsewhere, this standard has been described in slightly different terms:

> The determination of the appropriate bargaining unit is a
> finding of fact. This Court will not substitute its judgment
> for that of the commission with regard to the appropriate
> bargaining unit unless there is a clear showing of error. *Id.*[8]
> [*Muskegon Co Professional Command Ass'n, supra* at 374.]

See also *Hosp Employees' Div, Local 79, Service Employees' Int'l Union, AFL-CIO v Flint Osteopathic Hosp*, 390 Mich 635, 638; 212 NW2d 897 (1973) ("The appellate courts of this state will hesitate to substitute a judicial judgment of the appropriate unit for MERC's determination, and will do so reluctantly and only upon a showing of clear error").

Const 1963, art 6, § 28 indicates that factual determinations by the MERC are to be reviewed according to the competent, material, and substantial evidence standard. Under these circumstances, the phrase "a clear error" is properly understood as an absence of competent, material, and substantial evidence on the whole record to support the finding.

Decisions of the MERC regarding residual bargaining units are generally to be given significant deference under this standard. Not only do such disputes tend to be unique, but a residual-unit case necessarily involves employees who remain after the formation of other, better defined bargaining units. Gathering up remaining employees into a residual unit will nearly always involve joining employees with diverse job descriptions. The factual determination whether the proposed residual unit is excessively diverse lies with the MERC, and it will not be disturbed if it is supported by competent, material, and substantial evidence.

---

[8] *Michigan Ass'n of Public Employees v AFSCME Council 25, supra.*

We agree with Judge WHITE that the decision of the MERC was sound. While the residual group contains persons with varying responsibilities and compensation levels, we see no sign that the statutory purposes or the goals of collective bargaining would be frustrated by formation of the unit approved by the MERC. On review of this matter, we are satisfied that its findings were supported by competent, material, and substantial evidence.

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the decision of the Michigan Employment Relations Commission. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, KELLY, and TAYLOR, JJ., concurred.

WEAVER, J. I concur with the result of the per curiam opinion, but write separately to clarify the application of the substantial evidence standard.

The opinion states: "Decisions of the MERC regarding residual bargaining units are generally to be given significant deference under this standard." *Ante,* p 308. This statement implies a more limited review under the substantial evidence standard than this Court has adopted. This Court's interpretation of the substantial evidence standard was described in *MERC v Detroit Symphony Orchestra*, 393 Mich 116, 124; 223 NW2d 283 (1974):

> What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of de

novo review, it necessarily entails a degree of qualitative
and quantitative evaluation of evidence considered by the
agency. Such review must be undertaken with considerable
sensitivity in order that the courts accord due deference to
administrative expertise and not invade the province of
exclusive administrative fact-finding by displacing an
agency's choice between two reasonably differing views.

*Detroit Symphony Orchestra* still controls our appli-
cation of the standard.

I agree that it is correct to affirm the MERC decision
that an election may be conducted to determine
whether the residual employees want to join the
existing clerical employee bargaining unit. I do so
because a thorough review of the whole record
reveals a close decision. On the one hand, the func-
tions of the residual employees seem too diverse to
share a "community of interest." On the other, these
employees clearly share supporting roles in the col-
lege community. Given that reliance on either of these
factors is reasonable, it is not our place to reverse the
MERC's decision. The result in this case is further sup-
ported by the policy articulated in *Hotel Olds v State
Labor Mediation Bd*, 333 Mich 382; 53 NW2d 302
(1952), which seeks to create the largest unit
possible.

For the reasons above, I concur separately.