DETROIT BOARD OF EDUCATION v LOCAL 28, ORGANIZATION
OF SCHOOL ADMINISTRATORS AND SUPERVISORS, AFL-CIO

Docket No. 49511. Submitted October 21, 1980, at Detroit.—Decided
    May 19, 1981. Leave to appeal applied for.

    The Detroit Board of Education filed a petition with the Michigan
    Employment Relations Commission (hereinafter MERC) to clar-
    ify whether those persons employed as the director of commu-
    nications, as a divisional director or as a region assistant
    should be excluded from the bargaining unit represented by
    Local 28, Organization of School Administrators and Supervi-
    sors, AFL-CIO. The Board argued that the persons in such
    positions should be excluded from the bargaining unit by
    reason of either falling within the executive exclusion or being
    confidential employees. The Local argued that the subject em-
    ployees should be not excluded from the bargaining unit under
    either the executive employee or confidential employee exclu-
    sions. MERC, after making its findings of fact and determina-
    tions, issued an order of clarification which excluded from the
    bargaining unit the director of communications, the region
    assistants, and those divisional directors who reported to super-
    intendent level positions rather than to other divisional direc-
    tors. The Local appeals. *Held:*

    1. The questions of whether the person filling the position of
    director of communications is a confidential employee and
    whether the region assistants and divisional directors fell
    within the executive function exclusion were questions of fact
    for consideration by MERC pursuant to its duty to determine
    the appropriate bargaining unit. The findings of fact by MERC
    are conclusive if supported by competent, material and substan-
    tial evidence on the record as a whole.

    2. There was sufficient competent and material evidence
    supporting the determination by MERC that the employees

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1761.
[2, 3] 48A Am Jur 2d, Labor and Labor Relations §§ 1764-1766.
[3] 48 Am Jur 2d (Rev), Labor and Labor Relations § 359.
    Who are supervisors for purposes of bargaining-unit determinations
    in state public employment labor relations. 96 ALR3d 723.

exempted from the bargaining unit fell within the executive employee exclusion or the confidential employee exclusion.

Affirmed.

1. LABOR RELATIONS — APPEAL — PUBLIC EMPLOYEES — STATUTES.

The standard of appellate review of a decision of the Employment Relations Commission as to findings of the commission with respect to questions of fact is that the findings shall be conclusive if supported by competent, material and substantial evidence on the record considered as a whole (MCL 423.23[e]; MSA 17.454[25][e]).

2. LABOR RELATIONS — PUBLIC EMPLOYEES — BARGAINING UNITS — STATUTES.

The Employment Relations Commission is empowered to determine the appropriate units within which public employees may organize for the purpose of collective bargaining (MCL 423.213; MSA 17.455[13]).

3. LABOR RELATIONS — PUBLIC EMPLOYEES — BARGAINING UNITS — EXCLUDED EMPLOYEES.

The question of whether a public employee shall be excluded from a bargaining unit by reason of being either an executive employee or a confidential employee is a question of fact to be determined by the Employment Relations Commission.

*Gordon J. Anderson,* for petitioner.

*Miller, Cohen, Martens & Sugerman, P.C.* (by *Donald F. Sugerman* and *Kathy J. Ganger),* for respondent.

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

M. J. KELLY, J. The Organization of School Administrators and Supervisors (OSAS), respondent below, appeals of right a decision and order of the Michigan Employment Relations Commission (MERC), clarifying the OSAS bargaining unit to exclude certain employees under an "executive exclusion" recognized in *Hillsdale Community*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*Schools v Labor Mediation Board,* 24 Mich App 36, 39; 179 NW2d 661 (1970). The petition for clarification, initiated by the Detroit Board of Education, was submitted pursuant to the recognition provision of the parties' 1976 collective bargaining agreement, which stipulated to the parties' disagreement over classification of the disputed positions.[1]

In its opinion, the Commission concluded that those persons who were classified as region assistant or director of communications and those divisional directors not subordinate to other divisional directors were subject to the executive exclusion and thus barred from OSAS representation. Specifically, the Commission found that: the duties of region assistants were equal to those of "high-level public officials"; the director of communications participated in the "formulation and dissemination" of labor policies and thus held a confidential position; and divisional directors occupied policy making positions requiring exclusion. On appeal, we are bound by the Commission's factual conclusions if supported by competent, material and substantial evidence.

In its opinion, the Commission described the structure and authority of the City of Detroit School District as follows:

---

[1] The relevant provision of the parties' collective bargaining agreement provides in part:

"Excluded from the unit are all personnel employed in classifications not specifically listed above as well as all confidential, managerial and executive employees.

"The Board and OSAS disagree concerning the unit placement of Director, Communications; Divisional Director; and Region Assistant. The Board would exclude them and OSAS would include them. The Board has filed a Petition for Unit Clarification with the Michigan Employment Relations Commission. That Petition has been docketed as Case No. R76 G374. The persons who are the subject of the aforesaid Petition will be covered by the terms and conditions of this Agreement until removed by a final decision on the issue by MERC and/or state courts."

"The Detroit School District is divided into eight semiautonomous regions in accordance with State Law. Each region has a five member regional board of education, and is run by a region superintendent and two region assistants. The eight region superintendents are conceded by the parties to be executive employees, and they are excluded from the OSAS bargaining unit along with region personnel officers. Superimposed on the eight regions is a thirteen member central board of education with its central staff, which oversees the operation of the eight regions and formulates policies for and manages the entire School District.

"The central staff of the Employer is composed of a number of classifications which are conceded by both parties to be executive employees and are not in any bargaining unit. These executive employees are the general superintendent, and his two assistants; an executive deputy superintendent; three deputy superintendents; an associate superintendent, which position was not filled at the time of the hearing; approximately eight assistant superintendents; and an executive director. In addition, there are a number of unspecified excluded executives or confidential employees in the personnel and labor relations departments of the Employer. Approximately 25 of the foregoing positions, including certain individuals in the Union's bargaining unit and certain excluded employees on Employer's labor relations staff, make up the Employer's executive staff, which is responsible for setting policy where the board has not ruled and carrying out the policies of the board. The Union contends there are approximately 40 excluded executive employees in the School District, but an accurate count is not indicated in the record.

"Below the level of executive director in the Employer's hierarchy is the position of divisional director, which is the other major classification in dispute in this proceedings [sic], and the director of communications position which is also in dispute. The eleven divisional directors in dispute in this case generally report to one of the superintendent positions, except for an undesignated few who report to other divisional directors, especially in the curriculum area. These divisional directors are responsible for the following programs or

areas of the Employer's operations: technical planning; office of federal, state and special programs; adult education and summer schools; school-community relations; planning and building studies; department of research and evaluation; physical plant management; health and physical education; mathematics and science education; aide training program; and office of curriculum, staff development, and federal, state, and special programs. The final position in dispute, the director of press, radio and TV relations, also referred to as the director of communications, sits on the Employer's executive staff along with the divisional directors for federal and state programs and school-community relations. All of the foregoing individuals whose classification is in dispute occupy the highest classifications in the Union's bargaining unit and are the highest paid individuals in that unit."

In a June 12, 1978 order, the Commission denied the OSAS's motion to reconsider the earlier order. On appeal, the OSAS raises three issues, each of which contests the Commission's application of the executive exclusion to one of the three positions at issue.

OSAS first alleges as reversible error the Commission's conclusion that region assistants and those divisional directors who do not report to other such directors were excludable as executive employees. In this regard, we note the limited standard of review for findings of fact made by the Commission, embodied in MCL 423.23(e); MSA 17.454(25)(e):

"The findings of the commission with respect to questions of fact if supported by competent, material, and substantial evidence on the record considered as a whole shall be conclusive."

See also Const 1963, art 6, § 28 and *Council 25, AFSCME v Macomb County Road Comm*, 101

Mich App 91, 107; 300 NW2d 462 (1980), citing *Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974).

Under MCL 423.213; MSA 17.455(13), the Commission is empowered to determine the appropriate units within which public employees may organize:

"The commission shall decide in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining as provided in section 9e of Act No. 176 of the Public Acts of 1939, as amended, being section 423.9e of the Michigan Compiled Laws * * *."

Pursuant to this statutory grant of authority, the Commission has developed certain basic guidelines to determine what shall constitute an exempt executive employee.[2] Due to substantial differences

[2] Under the definition contained in MCL 423.2(e); MSA 17.454(2)(e), the term "employee" does not include "any individual employed as an executive or supervisor". However, we note that this definition does not apply to public employees, which have been statutorily designated in MCL 723.202; MSA 17.455(2). Thus, since the definition of "public employee" includes all persons in the service of the state (including executives or supervisors), the rights granted in MCL 423.209; MSA 17.455(9) apply to all such employees. The statute provides:
"It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice."
The executive exclusion, as applied to public employees, is thus based upon the Commission's power to delineate appropriate bargaining units. As noted in *Dearborn School Dist v Labor Mediation Board,* 22 Mich App 222, 228; 177 NW2d 196 (1970), MCL 423.9(e); MSA 17.454(10.4) "does not prohibit those employees engaged in executive or supervisory positions from organizing, but only that they shall not be included in a bargaining unit containing nonsupervisory employees in the same plant or business enterprise".

among various employing units, these basic guidelines have required application on a case-by-case basis. In *Macomb County Board of Comm'rs,* 1979 MERC Lab Op 995, 1000, the Commission summarized these guidelines:

"Determination of executive status has always been made on a case-by-case basis; the Commission has declined to establish a rule as to the appropriate number of executives per employer, but has instead analyzed the general organization and administrative structure of the individual employer. We have indicated that we will not necessarily limit an employer to one executive per department. *City of Dearborn Heights,* 1978 MERC Lab Op 190, *Genesee County,* 1978 MERC Lab Op 552.

"We have traditionally limited the executive exclusion to policy making heads of major departments who operate with a substantial degree of autonomy. See *Hillsdale Community Schools,* 1968 MERC Lab Op 859, aff'd 24 Mich App 36, lv den 384 Mich 779 (1970); *City of Warren,* 1970 MERC Lab Op 211. In *City of Grand Rapids,* 1979 MERC Lab Op 198, we expanded the definition of executive to include those who *effectuate* policy with substantial and broad discretion. We also indicated in *Detroit Bd of Ed,* 1978 MERC Lab Op 575, that the executive exclusion may have to be applied differently to a small employer with limited supervisors than to a larger employer with a substantial supervisory staff which is still entitled to a cadre of exempt executive decisionmakers. We indicated that we will look at factors such as extent of authority, scope of responsibility, and interchangeability of function with other executives. See, also, *City of Detroit (Police Dep't)* 1978 MERC Lab Op 159."[3]

---

[3] In *City of Grand Rapids,* 1979 MERC Lab Op 198, 202, the Commission discussed further the application of its guidelines to large employers, specifically the Detroit Board of Education:

"As we stated in *Detroit Board of Education,* 1978 MERC Lab Op 575, the determination of executive status cannot be premised solely on reviewing the decisionmaking responsibilities of the position, viewed *in vacuo,* apart from the context in which essential managerial decisions of the organization are made. It is appropriate to consider the total size of the Employer's work force and the locus of

OSAS does not contest the Commission's use of an executive exclusion to determine bargaining units. Rather, it is alleged that the Commission had before it insufficient evidence from which to conclude that the disputed region assistants and divisional directors held executive status. To resolve this conflict, we must review the evidence presented below under the competent, material and substantial evidence" standard of review.

## I. *Division Directors*

Several witnesses testified below regarding the duties performed by various divisional directors. Initially, Richard Levy, Assistant to the Superintendent, testified that Herschel Fort and Freeman Flynn, divisional directors of the offices of Federal, State and Special Programs and School-Community Relations respectively, participated in weekly meetings of the school board's executive staff. The function of this staff is to execute policies set by the school board and to set policies in areas where the board failed to act. At these meetings, labor policies are also discussed. Flynn also acts as a school board liaison to the community for such programs as millage campaigns. Bernard Coker, an Assistant Superintendent, testified as to the duties of John L'Hote, Divisional Director of Physical Plant Management. L'Hote supervises approximately 285 tradesmen and an additional 2,000 to 2,400 cleaning personnel and allocates among the various schools a maintenance budget of $40,000,-000. He also has complete discretion to approve

decisionmaking within it. An organization of 20,000 employees such as the Detroit school system may or may not be administered effectively through 40 executives. In any event, we found it appropriate to grant the Employer's request to expand the cadre of Detroit school administrators who would be considered to include some 8 or 9 divisional directors who reported directly to superintendents."

supply requisitions of a value less than $400 and has input on the approval of requisitions over that amount. L'Hote also has authority to close individual school buildings in emergencies and has initiated measures to reduce energy consumption. Finally, L'Hote assists in formulating labor policies and conducting labor negotiations with several bargaining units representing those employees he oversees.

Coker also testified concerning Michael Boggio, Divisional Director of Technical Planning. Boggio's duties include supervision of new construction and school improvement projects, selection of contractors for jobs under $50,000, performance evaluations for the 25 employees under him and the recommendation of labor policies for those employees. The duties of Merle Henrickson, Divisional Director for Planning and Building Studies, were said to include the preparation of educational performance specifications for new school construction, determination of school boundaries and decisions on whether to close individual schools due to declining enrollment.

Melvin Chapman, Deputy Superintendent for Educational Services, testified to the duties of the above directors and others. Chapman explained the duties of Donald Ferrier, Divisional Director of Adult Education and Summer Schools, as being responsible for summer and evening school programs and administration of an outreach educational program. Ferrier makes the decisions as to budget and personnel allocation for the various programs and lobbies for state and federal financial assistance. Robert Luby, Divisional Director for Health and Physical Education, was said to control the funds collected at interscholastic sports events, authorize expenditures for athletic equip-

ment, decide when and where sporting events will be held and set policies for the conduct of physical education classes. Mario Motter, Divisional Director of Mathematics and Science Education, was said to be responsible for determining the content of math and science programs in the schools. James Neubacher, Divisional Director of the Aide Training Program, was said to operate various offices in the Stevenson Building, supervise on-site training of teacher's aides and resolve disputes involving use of his building. Neubacher also formulates programs for more efficient use of teacher's aides.

The final witness for the school board was Lewis Ellis, Divisional Director of the Office of Curriculum, Staff Development and Federal, State and Special Programs. Ellis testified that he administers the budget for personnel, salaries, fringe benefits, materials and supplies. He also reviews grievances previously ruled upon by lower level administrators. Two of the other divisional directors, Mario Motter and Robert Luby, report to Mr. Ellis. Lastly, Ellis explained the duties of Robert Lankton, Divisional Director for the Department of Research and Evaluation. It is Lankton's responsibility to determine whether various research or testing programs will be conducted, to train personnel to conduct examinations and to analyze and report the test results. He also participates in labor negotiations.

In *Employment Relations Comm v Detroit Symphony Orchestra, Inc, supra,* 124, the Supreme Court discussed the standard of review imposed by MCL 423.23(e); MSA 17.454(25)(e):

"What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both

sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review."

In light of this mode of review, we hold the Commission's decision as to divisional directors is supported by competent, material and substantial evidence on the whole record. The uncontradicted testimony of board witnesses Levy, Coker, Chapman and Ellis discloses that those divisional directors exempted from the OSAS unit exercise substantial autonomy to implement or effectuate management policies. The testimony from union witness Mario Motter disclosed the lesser status of the divisional directors of mathematics and science and health and physical education. The Commission's decision took this evidence into account and retained in the bargaining unit those two divisional directors who report to other divisional directors. In light of the substantial evidence indicating executive status for the divisional directors actually exempted from the OSAS unit, we must affirm the Commission's order.

## II. *Region Assistants*

Testimony was also heard from Marvin Chapman as to the duties of region assistants. Chapman disclosed that region assistants participate in such

policy decisions as whether to have an "open school" (without specific grade levels) in the region and whether to bus children within a region to remedy overcrowding. The region assistants also develop curriculum and graduation requirements and make recommendations to implement central policy decisions as to testing to be conducted in the various schools. These policies may not, however, go beyond the bounds of central school board policy where such general polices are in effect. Finally, the region assistants handle requests for transfers within a region, participate in region school board meetings and evaluate the performance of other employees in the region.

The union also presented for testimony Lawrence Niblett, a region assistant for Region V. Niblett stated that he has never been invited to an executive session of the Region V Board. He also testified that a job announcement submitted into evidence adequately summarized the duties of region assistants.[4] Niblett also said that the policy

---

[4] The job announcement listed the following duties and responsibilities of region assistants:

"Under the direction of the Region Superintendent, discharge the duties and responsibilities assigned to the region office in one of the regions of the city. More specifically the Region Assistant will take substantial responsibility for:

"1. Working with principals, teachers, and citizens on various region committees which study and attempt to improve the curriculum, school organization, special education, professional staff growth, and other aspects of the school and its program.

"2. Conferring with parents, community groups, and employees on problems which are received in or referred to region offices.

"3. Participating in school-community affairs, especially in community meetings which deal with school matters.

"4. Aiding in the development of school improvement projects—local, state, and federal projects.

"5. Reviewing various types of reports, communications, personnel ratings and requests for teaching materials and equipment which are channelled through the region offices.

"6. Consulting with principals on present and future building needs, school boundaries, program planning, instructional supplies, and other matters.

regarding admission to the Region V middle school was set by the region superintendent.

Our review of the evidence discloses no error in the Commission's conclusion that region assistants are executive employees. The descriptions of the position and its attendant responsibilities indicates that region assistants apply a wide degree of discretion to implement region board policies. Additionally, the region assistants in some cases develop policies and procedures to govern matters affecting their own region. We thus hold there was sufficient competent evidence to support the Commission's exclusion of region assistants from the OSAS bargaining unit.

### III. *Director of Communications*

Hazel Trumble, Divisional Director of Communications, was said by Richard Levy to be a member of the executive board. Her primary function was to handle press and media relations. In so doing, Mrs. Trumble has a direct input into the content of public announcements and formulates the school board's public posture on such matters as millage elections. She is also exposed to confidential information prior to its release to the public and determines to what extent such information will be disseminated. Trumble is also provided information as to positions to be taken by the school board in collective bargaining agreement negotiations.

The confidential exclusion, because it deprives public employees of their right to collective bargaining under PERA, has been applied on a limited basis. *Riverview Community Schools,* 1968 MERC Lab Op 419. In this regard, the Commission

---

"7. Sharing in the supervision of the staff assigned to the region office and the personnel connected with auxiliary services.

"8. Other activities as assigned."

has held that an employee's mere access to confidential or labor relations material will not provide a basis for the exclusion. *Sixty-First Dist Court,* 1975 MERC Lab Op 785, *Lake Michigan College,* 1971 MERC Lab Op 190, 193. The circumstances under which the confidential exlusion arises were summarized in *City of Ypsilanti,* 1975 MERC Lab Op 362, 366, quoting *Benton Harbor Board of Education,* 1967 MERC Lab Op 743:

" 'It is the Board's customary practice to exclude from bargaining units employees who act in the *[sic]* confidential capacity to officials who formulate or effectuate general labor relations policies, *or* who, in the course of their duties regularly have access to information concerning anticipated changes which may result from collective bargaining negotiations. However, the Board's classification as confidential does not apply to individuals having access to personnel or statistical information upon which such policy is based, or to employees who may type documents relating to negotiations or grievances after the information contained therein is known by the union or the employees involved.' "

Applying this standard, we hold that the Commission properly found the Director of Communications to be an exempt confidential employee. The evidence presented below discloses that Hazel Trumble has more than mere access to confidential labor relations information. In fact, she has control over the content of information released for public consumption. Additionally, Trumble is given advance notice of collective bargaining positions to be adopted by the school board and works closely with the general superintendent to determine board positions on various public issues. These duties clearly make Trumble a confidential employee.

Affirmed. No costs, a public question being involved.