CITY OF DETROIT DEPARTMENT OF TRANSPORTATION v
SUPERVISORS CHAPTER OF THE CITY OF DETROIT
DEPARTMENT OF TRANSPORTATION FOREMAN'S
ASSOCIATION

Docket No. 55494. Submitted June 24, 1981, at Detroit.—Decided
September 8, 1981. Leave to appeal applied for.

. The Supervisors Chapter of the City of Detroit Department of
Transportation Foreman's Association petitioned the Michigan
Employment Relations Commission (MERC), seeking collective-
bargaining rights with the City of Detroit. Following hearings,
MERC ordered an election regarding whether the association
would organize a bargaining unit and be represented by a
collective-bargaining agent. The city appeals, challenging the
inclusion in the bargaining unit of several job classifications it
deems to be executive positions. *Held:*

The record reveals that the commission's decision to include
the disputed classifications in the bargaining unit is supported
by competent, material, and substantial evidence and, there-
fore, is conclusive on appeal.

Affirmed.

1. LABOR RELATIONS — ADMINISTRATIVE DECISIONS — APPEAL — STAT-
UTES.

The Court of Appeals, in reviewing a decision of the Employment
Relations Commission, will hold the commission's findings of
fact to be conclusive where supported on the record, considered
as a whole, by competent, material, and substantial evidence
(MCL 423.23[e]; MSA 17.454[25][e]).

2. LABOR RELATIONS — EXECUTIVE STATUS.

The Employment Relations Commission, in determining whether
a particular job title occupies executive status, may consider
such factors as where the primary responsibility for developing
an organization's budget lies, who plays a significant role in
preparing departmental rules and regulations, the number of

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1761.
[2] 48 Am Jur 2d, Labor and Labor Relations § 120 *et seq.*

executive positions relative to the size of the organization, the degree of interchangeability between an employee and his immediate superior, and the degree of participation in labor negotiations or the formulation of collective-bargaining policy.

*Sylvester Delaney,* Deputy Corporation Counsel, and *William Dietrich, Frank W. Jackson,* and *James C. Zeman,* Assistants Corporation Counsel, for the city.

*Maurer, Kalls, Long & Bunn,* for the Foreman's Association.

Before: J. H. GILLIS, P.J., and BASHARA and K. N. SANBORN,* JJ.

PER CURIAM. The City of Detroit, Department of Transportation, appeals as of right from a decision of the Michigan Employment Relations Commission (MERC). The commission entered an order directing an election in a bargaining unit of the Supervisors Chapter of the Department of Transportation Foreman's Association. The city disputes the inclusion of several job classifications within the bargaining unit on the basis that they were within the "executive exclusion".

This Court has only limited review of a MERC decision. As recently stated in *Detroit Board of Education v Local 28 Organization of School Administrators and Supervisors, AFL-CIO,* 106 Mich App 438, 442-443; 308 NW2d 247 (1981):

"[W]e note the limited standard of review for findings of fact made by the Commission, embodied in MCL 423.23(e); MSA 17.454(25)(e):

" 'The findings of the commission with respect to questions of fact if supported by competent, material, and substantial evidence on the record considered as a whole shall be conclusive.'

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"See also Const 1963, art 6, § 28 and *Council 25, AFSCME v Macomb County Road Comm,* 101 Mich App 91, 107; 300 NW2d 462 (1980), citing *Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974)."

See also *Deering v Unionville-Sebewaing Area Schools,* 97 Mich App 629, 631-632; 296 NW2d 131 (1980).

The commission has adopted a case-by-case approach to determine whether the executive exclusion applies. *City of Detroit,* 1978 MERC Lab Op 483, *Macomb County Board of Comm'rs,* 1979 MERC Lab Op 995.

In *City of Grand Rapids,* 1979 MERC Lab Op 198, 201, the commission expanded its definition of executive from applying only to "policymaking heads of major departments" to include "an employee who exercises broad discretion, even if it is only in regard to *effectuating* management policy". See also *Macomb County Board of Comm'rs, supra, Wayne County Board of Comm'rs,* 1980 MERC Lab Op 858.

In deciding whether a job title occupies executive status, the commission may consider several factors, such as who has primary responsibility for developing the budget, who plays a significant role in preparing departmental rules and regulations, the number of executive positions relative to the size of the organization, the degree of interchangeability of functions between the employee and his immediate superior, and the degree of participation in labor negotiations or formulation of collective-bargaining policy.

However, the commission has stated that any of these factors alone is not sufficient for a finding of executive status. The commission has refused to

exclude employees from a supervisors' unit merely because they help prepare budget proposals or because they are assistants to executives or have some interchangeable functions with executives. *City of Detroit,* 1973 MERC Lab Op 733, *City of Detroit,* 1978 MERC Lab Op 483. Neither is exclusion warranted because an individual is responsible for investigating employees' misconduct. *Detroit Board of Education,* 1980 MERC Lab Op 182. The fact that a person replaces an executive when he is absent is not sufficient to exclude him from the supervisors' bargaining unit. *Twp of Waterford,* 1974 MERC Lab Op 815.

In *City of Grand Rapids, supra,* MERC concluded that the executive exclusion applied because the police majors had primary responsibility for budgets, reported directly to the chief of police or his deputy and had a significant role in preparing and promulgating rules and regulations. Similarly, in *Organization of School Administrators and Supervisors, supra,* this Court upheld a MERC decision of executive status for employees who had some policy input and broad or complete discretion in executing policies.

We have examined the record and conclude that the commission's decision to include the disputed classifications in the bargaining unit is supported by competent, material, and substantial evidence.

The four disputed job classifications are the assistant superintendents of plant maintenance, rolling stock, transportation operations, and the transportation district superintendent.

The Department of Transportation is headed by the department director and deputy director. Each of its seven divisions is headed by a superintendent, conceded to be an executive, and an assistant superintendent. According to Lionel Little, a for-

mer deputy director, the assistant superintendents work jointly with the superintendents and are responsible for day-to-day operations of their divisions. They make work assignments, handle disciplinary action, have input regarding budget requests and regarding general policy set by the executive committee, and substitute for the superintendent in his absence.

The commission has determined that the assistant superintendents assist the superintendents, attend executive committee meetings, and substitute for the superintendent when he is on personal leave. The commission concluded that the positions did not have sufficient authority to be classified as executives. Similarly, the commission concluded that, although the transportation district superintendent possesses considerable supervisory responsibilities, the individual did not play a sufficient role in determining or effectuating policy to be excluded from the unit as an executive.

In the present case, the assistant superintendents have limited input into policymaking. They are two levels removed from the department director, who bears ultimate decision-making responsibility. One of the assistant superintendents testified that he attended the executive committee meetings but primarily only answered questions. He stated that he was not authorized to formulate policy for his department. Responsibility for day-to-day operations does not automatically constitute an exercise of broad discretion in effectuating management policy. Although a close question exists in light of the numerous duties involved, the responsibilities exercised by the assistant superintendents are consistent with a high-level supervisory position.

The transportation district superintendent also

makes operational decisions and has primary disciplinary authority. However, this position is even further removed from ultimate decision-making authority. The commission's decision was supported by competent, material, and substantial evidence.

Affirmed.