GRANDVILLE MUNICIPAL EXECUTIVE ASSOCIATION v
CITY OF GRANDVILLE

Docket No. 103589. Decided October 14, 1996. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, vacated the judgment of the Court of Appeals and
remanded the case to the Employment Relations Commission for
further proceedings.

The Grandville Administrative Employees Association petitioned the
Employment Relations Commission to represent twelve supervi-
sory employees of the City of Grandville. The MERC excluded five
employees, the clerk, treasurer, assessor, police chief, and fire
chief, on the ground that they were executive employees. The
excluded employees then petitioned the MERC to form an executive
bargaining unit, the Grandville Municipal Executive Association.
The MERC dismissed the petition, finding that persons holding exec-
utive positions in the public sector should be precluded from col-
lective bargaining as a matter of public policy. The Court of
Appeals, FITZGERALD, P.J., and MACKENZIE and L. M. GLAZER, JJ.,
reversed in an opinion per curiam, finding that the public employ-
ment relations act does not preclude executive employees from
joining together in collective bargaining units (Docket No. 164131).
The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and
Justices BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court
held:

The Court of Appeals erred in reversing a policy determination
by the Employment Relations Commission that executive employ-
ees in the public sector may not belong to collective bargaining
units.

The executive exclusion relied on by the MERC derives from its
authority under § 13 of the PERA to decide in each case the unit
appropriate for the purposes of collective bargaining. The agency
did not rely on § 9e of the labor mediation act, but used its long-
standing public-policy rationale to hold that the proposed bargain-
ing unit was inappropriate. However, after the Court of Appeals
decision in this case, the MERC changed its historic practice of
excluding from collective bargaining those public employees whom

it has classified as executive. In so doing, it narrowed its definition of executive employee and expanded its definition of confidential employee. Thus, rather than reinstatement of the MERC's decision, remand to the MERC is required to permit the commission to apply its new definitions to the challenged positions.

Vacated and remanded.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the determination of the majority of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. Peremptory disposition without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In this case, because factual and legal assessment is required, peremptory disposition is not appropriate.

213 Mich App 586; 540 NW2d 681 (1995) vacated.

*Pinsky, Smith, Fayette & Hulswit* (by *Edward M. Smith* and *Pamela K. Bratt*) for Grandville Municipal Executive Association.

*Varnum, Riddering, Schmidt & Howlett* (by *John Patrick White*) for City of Grandville.

Amici Curiae:

*Cohl, Stoker & Toskey, P.C.* (by *Peter A. Cohl* and *John R. McGlinchey*), for Michigan Municipal League and Michigan Townships Association.

*Berry, Francis, Seifman, Salamey & Harris, P.L.C.* (by *Kurt L. Heise*), for City of Woodhaven.

PER CURIAM. The issue in this case is whether the Court of Appeals erred in reversing a policy determination by the Michigan Employment Relations Commission that "executive" employees in the public sector may not belong to collective bargaining units. We hold that the panel did err. For reasons that we will explain later in this opinion, we vacate the judgment

of the Court of Appeals and remand this matter to the MERC for further proceedings.

I

In 1990, the Grandville Administrative Employees Association petitioned the Michigan Employment Relations Commission to represent twelve supervisory employees of the City of Grandville.[1] The city challenged the inclusion of seven of these workers on the ground that they were "executive" employees. The MERC agreed with the city regarding five of the positions—clerk, treasurer, assessor, police chief, and fire chief. *City of Grandville v Grandville Administrative Employees Ass'n*, 1991 MERC Lab Op 489. The decision was not appealed.[2]

Subsequently, the five excluded employees filed a new petition with the MERC to form an executive bargaining unit. The city challenged the petition on the ground that executive employees are precluded from forming a collective bargaining unit by § 13 of the public employment relations act (PERA), which incorporates § 9e of the labor mediation act (LMA). MCL 423.213, 423.9e; MSA 17.455(13), 17.454(10.4).

Alternatively, the city argued that the proposed bargaining unit should be disallowed either (1) for reasons of public policy, or (2) because the five challenged positions should be considered "confidential," i.e., these executives should be excluded from bargaining on the basis of their role in the budgeting pro-

---

[1] The initial petition also named some nonsupervisory employees, but the request to include them was withdrawn before the hearing.

[2] Nor does anyone now dispute the MERC's determination that these five positions are "executive."

cess and in recommending, formulating, and effectuating city policy at the highest level.

The MERC disagreed with the city's statutory interpretation, but agreed with its "public policy" argument. The commission did not discuss the "confidential employee" issue. *City of Grandville v Grandville Municipal Executive Ass'n*, 1993 MERC Lab Op 206.

The petitioning employees appealed to the Court of Appeals, which reversed.[3] The panel said that the MERC's decision was based on substantial and material errors of law. The Court remanded the matter to the MERC "for a finding of an appropriate bargaining unit."[4] The Court denied rehearing.

The City of Grandville has applied to this Court for leave to appeal.[5]

II

The LMA was adopted by the Legislature in 1939 to govern employment relations in Michigan. 1939 PA 176, MCL 423.1 *et seq.*; MSA 17.454(1) *et seq.* The LMA was modeled after the National Labor Relations Act (NLRA), which was adopted by Congress in 1935 (the Wagner Act). 49 Stat 449, as amended 29 USC 151 *et seq.*[6]

---

[3] 213 Mich App 586; 540 NW2d 681 (1995).

[4] *Id.* at 591. The city had filed a cross appeal, urging the Court of Appeals to hold that the PERA, by its terms, excludes executives and supervisory employees from collective bargaining, as a matter of law. The city again relied on § 13 of the PERA, which incorporates § 9e of the LMA. The Court rejected the argument.

[5] We also have received two motions for leave to file briefs amici curiae. One is from the Michigan Municipal League and the Michigan Townships Association, and the other is from the City of Woodhaven. The motions to file briefs amici curiae are granted.

[6] Both acts have been modified several times. Significant changes in the NLRA came about in 1947 with the passage of the Taft-Hartley amendments, commonly referred to as the Labor Management Relations Act.

Subsequently, the Legislature adopted the PERA to regulate labor relations between Michigan's public employers and employees. 1947 PA 336, as amended by 1965 PA 379, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*[7] The PERA incorporates by reference certain provisions of the LMA. The MERC is the agency that administers both acts.

One of the points of disagreement in the instant case concerns the extent to which the PERA applies to the same categories of employees as does the LMA. Subsection 2(e) of the LMA, which was added by the Legislature in 1949 (see footnote 6), expressly excludes persons who hold "supervisory" and "executive" positions from the definition of "employee":

> "Employee" includes any employee . . . but shall not include . . . any individual employed as an executive or supervisor . . . . [MCL 423.2(e); MSA 17.454(2)(e).]

At the time the petition was filed in the instant case, the only express definition of "employee" in the PERA appeared in § 2, which forbade strikes:

> No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions

---

Among other things Congress altered the definition of "employee" to exclude supervisors (29 USC 152), and precluded government workers from striking (29 USC 188—this provision is now 5 USC 7311). A short time later, the Michigan Legislature amended the LMA to exclude supervisory and executive employees from collective bargaining units, and passed the Hutchinson Act to prevent public employees from striking. 1947 PA 318, adding MCL 423.9e; MSA 17.454(10.4), and 1947 PA 336, adding MCL 423.202; MSA 17.455(2). Two years later, the LMA again was amended to define "employee" to exclude supervisors and executives. 1949 PA 230, adding MCL 423.2(e); MSA 17.454(2)(e).

[7] The PERA has been further amended by 1973 PA 25, 1976 PA 18, and 1994 PA 112.

thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a "public employee," shall strike. [1947 PA 336, MCL 423.202; MSA 17.455(2).][8]

This definition of "public employee" was moved to § 1 of the PERA by 1994 PA 112.[9]

Section 13 of the PERA, which provides the MERC with authority to determine appropriate collective bargaining units of public employees, incorporates by reference § 9e of the LMA. Section 13 states, in pertinent part:

*The commission shall decide* in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, *the unit appropriate for the purposes of collective bargaining as provided in section 9e* of Act No. 176 of the Public Acts of 1939, as

---

[8] As noted in n 6, the bar against strikes by public employees was part of the Hutchinson Act, 1947 PA 336.

[9] Section 1 is now the general definitional section of the PERA and provides, in pertinent part:

"Public employee" means a person holding a position by appointment or employment in the government of this state, in the government of 1 or more of the political subdivisions of this state, in the public school service, in a public or special district, in the service of an authority, commission, or board, or in any other branch of the public service. [MCL 423.201(e); MSA 17.455(1)(e).]

Besides adding definitions to § 1, 1994 PA 112 amended the no-strike provision in § 2 to read as follows:

A public employee shall not strike and a public school employer shall not institute a lockout. A public school employer does not violate this section if there is a total or partial cessation of the public school employer's operations in response to a strike held in violation of this section. [MCL 423.202; MSA 17.455(2).]

amended, being section 423.9e of the Michigan Compiled Laws . . . . [MCL 423.213; MSA 17.455(13) (emphasis supplied).]

Section 9e, in turn, provides:

> The unit shall be either the employees of 1 employer employed in 1 plant or business enterprise within this state, *not holding executive or supervisory positions,* or a craft unit, or a plant unit, or a subdivision of any of the foregoing units. If the group of employees involved in the dispute was recognized by the employer or identified by certification, contract, or past practice, as a unit for collective bargaining, the commission may adopt that unit. [MCL 423.9e; MSA 17.454(10.4) (emphasis supplied).]

III

In the instant case, the MERC disagreed with the city that the PERA, by its terms, forbids executive employees from belonging to collective bargaining units. Instead, the MERC relied on its previous decision in *Detroit v Governmental Accountants & Analysts Ass'n,* 1969 MERC Lab Op 187, for the proposition that persons holding executive positions in the public sector should be precluded from collective bargaining as a matter of public policy.

The Court of Appeals agreed that the PERA does not, by its terms, preclude executive employees from joining together in collective bargaining units. Citing *Muskegon Co Professional Command Ass'n v Muskegon Co,* 186 Mich App 365; 464 NW2d 908 (1990), the panel further reasoned that the absence of an express bar in the PERA means that all public employees, including executive employees, are "entitled to the rights and privileges granted under the PERA,

including the right to engage in lawful organizational activity." 213 Mich App 590. The Court specifically rejected the MERC's finding that executive employees could be excluded from collective bargaining as a matter of public policy:

> [O]n at least two occasions this Court has found it inappropriate to create an executive exclusion that is based on public policy. [*Dearborn School Dist v Labor Mediation Bd*, 22 Mich App 222, 229-230; 177 NW2d 196 (1970), and *Hillsdale Community Schools v Labor Mediation Bd*, 24 Mich App 36, 41-42; 179 NW2d 661 (1970).]

> In this case, the MERC's ruling was wholly contrary to the above case law. As we held in *Dearborn School Dist* and *Hillsdale Community Schools*, the Legislature has decreed that the public policy of this state is to grant public employees in executive positions the right to engage in collective bargaining. The MERC's ruling that public policy forbids executives in public employment from engaging in collective bargaining was therefore based on a substantial and material error of law. [213 Mich App 590-591.][10]

The Court of Appeals additionally observed:

---

[10] The two Court of Appeals opinions in *Dearborn School Dist* and *Hillsdale Community Schools* contain the following virtually identical observation about public policy:

Plaintiff further argues that it is against public policy to allow public employees who are supervisors, such as those involved in the instant action, to organize. As we stated in *City of Escanaba v Michigan Labor Mediation Bd*, 19 Mich App 273 [172 NW2d 836 (1969)], the legislature by the enactment of PERA has determined what the public policy of this State will be in regard to allowing public employees to organize. PERA was passed pursuant to Const 1963, art 4, § 48 which directly authorizes the legislature to "enact laws providing for the resolution of disputes concerning public employees . . . ." If plaintiff is in disagreement with the current public policy of this State his remedy lies with the legislature and not with the courts.

Furthermore, the MERC's ruling was contrary to the line of cases culminating with *Muskegon Co*, holding that the executive exclusion of § 9e does not preclude public employees who hold an executive position from exercising the rights and privileges granted to all public employees under the PERA, including the right to engage in lawful organizing activities. Thus, the ruling was again based on a substantial and material error of law. [*Id.* at 591.]

IV

The decisions of the MERC are reviewed on appeal pursuant to Const 1963, art 6, § 28, and MCL 423.216(e); MSA 17.455(16)(e). The commission's findings of fact are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 322; 550 NW2d 228 (1996). The MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f). *Id.* at 323.

In construing the PERA, this Court frequently looks to the interpretation of analogous provisions of the NLRA by the federal courts. *Id.* at 318, n 13. The United States Supreme Court accords great deference to the NLRB's interpretation of the NLRA,[11] and this Court extends similar consideration to the MERC's interpretation of the PERA. *Gibraltar School Dist v Gibraltar MESPA-Transportation*, 443 Mich 326, 337; 505 NW2d 214 (1993).

---

[11] *United States v Clark*, 454 US 555, 565; 102 S Ct 805; 70 L Ed 2d 768 (1982).

Concerning the MERC's authority under § 13 of the PERA to determine an appropriate collective bargaining unit, this Court has said:

> The appellate courts of this state will hesitate to substitute a judicial judgment of the appropriate unit for MERC's determination, and will do so reluctantly and only upon a clear showing of error. [*Hospital Employees Div of Local 79, Service Employees' Int'l Union, AFL-CIO v Flint Osteopathic Hosp*, 390 Mich 635, 638; 212 NW2d 897 (1973).]

Where a statutory construction by the MERC has endured for a long time, it should be accorded significant weight by a reviewing court. *Southfield Police Officers Ass'n v Southfield*, 433 Mich 168, 176-177; 445 NW2d 98 (1989).

The petitioners argue, nonetheless, that the executive exclusion developed by the MERC is not entitled to significant deference because the agency has not cited any decision of the Court of Appeals that has reached a similar conclusion. As we noted in *Southfield Police Officers Ass'n*, however:

> We cannot conveniently dismiss this longstanding interpretation of the PERA by the MERC as an "error of law" merely because no appellate court in this jurisdiction thus far has spoken publicly on the issue. This Court has traditionally accorded deference to the agency interpretation of a statute . . . . [*Id.* at 176.]

V

We are persuaded that the Court of Appeals clearly erred in the instant case in finding that the MERC committed a substantial and material error of law when it rejected the petitioners' proposed bargaining unit. In reversing the MERC, the panel failed to give the neces-

sary deference to the agency's expertise and long-standing practice.

To begin with, we agree with the city that the Court of Appeals misapprehended the MERC's ruling with regard to § 9e of the LMA, which is incorporated by reference in § 13 of the PERA. Although the panel acknowledged the MERC's public-policy rationale, most of the Court's analysis concerned the so-called executive exclusion in § 9e. As we explained earlier, however, the MERC agreed that § 9e does not bar executive employees from belonging to a collective bargaining unit. Rather, the executive exclusion relied on by the MERC derives from its authority under § 13 of the PERA to "decide in each case . . . the unit appropriate for the purposes of collective bargaining . . . ." This was consistent with the approach that the MERC has taken since shortly after the organizational provisions of the PERA were enacted in 1965.

In *Hillsdale Community Schools v Hillsdale Community Schools Principals and Supervisory Ass'n*, 1968 MERC Lab Op 859, the MERC reiterated its holding from *Saginaw Co Rd Comm v AFSCME*, 1967 MERC Lab Op 196, that public supervisory employees in Michigan could engage in collective bargaining, despite provisions to the contrary in the LMA and the NLRA. The MERC interpreted § 9e of the LMA to impose on the public sector, through § 13 of the PERA, only the restriction that supervisors not be in the same bargaining unit as nonsupervisory employees. The MERC noted, however, that "there is a level at which organization must end," and denominated that category "executive," i.e., "those employees who formulate, determine and effectuate management policy." *Hillsdale, supra* at 868.

In *Detroit,* 1969 MERC Lab Op 187, the commission clarified that § 9e of the LMA is not an impediment to the inclusion of executive public employees in collective bargaining units. Rather, the MERC reasoned that public-policy concerns justify excluding executives.

In the instant case, the MERC quoted from its opinion in *City of Detroit,* as follows:

> We have determined that a line of demarcation should be drawn between managerial employees, who may not engage in concerted activities of the type specified in PERA (absent consent of the public employer's legislative body), and employees who, although they may be supervisors, are not primarily creators of policy which affects the total activities of an employer or of a major division or department thereof. These policymaking managerial employees are designated in Section [9e] of the Labor Mediation Act as "executive." The executive employees are so intrinsically connected with a determination of policy that their engagement in concerted activity would damage, not enhance, the statutory purpose.
>
> The Public Employment Relations Act seeks to promote concerted activities, including collective bargaining, in the public sector. The Labor Mediation Act performs the same role in that portion of the private sector subject to state jurisdiction. If all employees, including those who report directly to the legislative body (or the board of directors in the private sector) engage in collective bargaining, there could be no effective collective bargaining on the part of the employer as there would be no employee to administer legislative policy. The same is true with respect to other employees who, subject to general legislative direction, formulate policy which affects the total governmental unit or a major division or department thereof. [1993 MERC Lab Op 209.]

The MERC has maintained a consistent position on the issue since that time. In *Grand Rapids v Fraternal Order of Police, Lodge No 97,* 1979 MERC Lab Op

198, 201, the commission reiterated its rationale for excluding executive employees as a matter of public policy:

> The executive exclusion has been defined in our past decisions to include "policymaking heads of major departments of a public employer, or those who pursuant to statutory or charter provisions, exercise a substantial degree of autonomy in carrying out their public services, and who have direct access or influence upon the governing body of the public employer in a policymaking role." Another definition we have used is that employees are excludable as executives if they are "responsible for formulating, determining and effectuating management policies" or if an individual "is authorized to formulate and adopt operative policy for his department; or may effectively recommend such policy." [Citation omitted.]

In reversing the MERC's "public policy" determination in the instant case, the Court of Appeals did not explain why the commission's conclusions about executive employees were unjustified. The Court simply cited two 1970 decisions involving supervisors for the general proposition that it is up to the Legislature to decide whether public employees should be allowed to organize.

The Court of Appeals also relied on *Muskegon Co*, *supra*. In that case, the panel disagreed with the MERC that the undersheriff's executive status disqualified him from collective bargaining. Such a determination was contrary to statute, the Court said. The opinion in *Muskegon Co* did not discuss the public-policy rationale relied on by the MERC in this case.

The MERC's practice of excluding executives for reasons of public policy was discussed, however, in an earlier opinion of the Court of Appeals:

The executive exclusion, as applied to public employees, is thus based upon the Commission's power to delineate appropriate bargaining units. As noted in *Dearborn School Dist v Labor Mediation Bd*, 22 Mich App 222, 228; 177 NW2d 196 (1970), MCL 423.9e; MSA 17.454(10.4) "does not prohibit those employees engaged in executive or supervisory positions from organizing, but only that they shall not be included in a bargaining unit containing nonsupervisory employees in the same plant or business enterprise." [*Detroit Bd of Ed v Local 28, Organization of School Administrators & Supervisors, AFL-CIO*, 106 Mich App 438, 443, n 2; 308 NW2d 247 (1981).]

Although the Court of Appeals cited *Detroit Bd of Ed* in the instant case, it did so merely to support its conclusions that "the so-called 'executive exclusion' of § 9e of the LMA applies to public employees only to the extent that it precludes executive public employees from being included in the same bargaining unit as nonsupervisory public employees," and that "§ 9e cannot be read as preventing [executive and supervisory employees] from exercising their right to collective bargaining." 213 Mich App 589. As we have explained, however, the MERC did not rely on § 9e in the instant case, but rather used the agency's long-standing public-policy rationale to hold that the proposed bargaining unit of executive employees was inappropriate.[12]

---

[12] The city and the amici curiae urge us to hold that both the MERC and the Court of Appeals have erred for three decades in holding that the PERA, by its terms, does not preclude executive and supervisory employees from belonging to collective bargaining units. They rely on § 13 of the PERA, incorporating § 9e of the LMA. We decline to address the issue, in light of our conclusion that the Court of Appeals erred in rejecting the MERC's public-policy rationale, and the MERC's recent adoption of new definitions of "confidential" and "executive" employee.

VI

Given our holding that the Court of Appeals clearly erred in reversing the MERC's "public policy" determination, we ordinarily would reinstate the MERC's decision. This is not the ordinary circumstance, however.

We take judicial notice that, in the aftermath of the decision of the Court of Appeals in this case, the MERC has changed its historic practice of excluding from collective bargaining those public employees whom it has classified as "executive." In so doing, the MERC has narrowed its definition of "executive" employee and expanded its definition of "confidential" employee.

In a recent case involving the Ingham County Road Commission, the MERC observed that one of the original reasons for excluding executives from bargaining "was that they were so intrinsically connected with the determination of public policy that permitting them to organize would interfere with the operation" of the PERA. Another rationale was that the employer could not bargain effectively "since there would be no one to administer the labor relations policies of the public employer's governing body." *Ingham Co Rd Comm v Office & Professional Employees Int'l Union, Local 512*, 1995 MERC Lab Op 306, 311. In light of the decision by the Court of Appeals in the instant case, the MERC concluded that the definition of "executive" employee should be narrower:

> Since executives are now to be allowed to engage in collective bargaining, the rationale for separating supervisors with significant policymaking responsibilities outside the area of labor relations from their fellow supervisors has evaporated. The above case law suggests that the Commission should strictly limit the number of executives to the

few employees who are essential for developing and administering labor relations policy at the highest level of a public employer. [*Id.* at 311-312.]

The MERC explained in *Ingham Co Rd Comm* that categorizing a particular job as other than executive "does not mean that the position lacks significant policymaking authority outside the area of labor relations, since an executive is defined by his or her specific labor relations policymaking duties, rather than the placement of his or her position on an organizational chart." *Id.* at 312.

Subsequently, in *Detroit Police Dep't v Detroit Police Command Officers' Ass'n*, 1996 MERC Lab Op 84, 105, the MERC expanded its definition of "confidential" employee to include those executives who formerly were excluded from collective bargaining because of their significant responsibilities for labor relations, i.e., "those individuals who formulate, determine and effectuate confidential labor relations policies at the highest levels of a public employer . . . ." Previously, the MERC had relied on the National Labor Relations Board's definition of "managerial" employee to exclude as confidential employees only "those who assist or act in a confidential capacity to persons who exercise managerial functions in the field of labor relations." *Id.* at 104.

The MERC overruled *Ingham Co Rd Comm*, "to the extent that it failed to recognize as confidential, rather than as merely executive, persons responsible for formulating labor relations policy at the highest levels of the employer," 1996 MERC Lab Op 105, and adopted the following new definition of "executive":

An executive means an employee who (1) is a policy-making head of a major department of a public employer; or (2) in the case of employers with 1,000 or more employees, is a chief deputy to a department head, or is the head of a section or division of a major department who reports directly to a chief deputy and who exercises substantial discretion in formulating, determining and effectuating management policy; or (3) pursuant to statutory or charter provisions, exercises a substantial degree of autonomy in carrying out his or her public services and who has direct access to or direct influence upon the governing body of a public employer in a policy making role; or (4) formulates, determines and effectuates management policy on an employer-wide basis. [*Id.* at 106.]

The MERC explained that, despite years of case law, the term "executive" had remained ambiguous, and that it was appropriate to attempt yet another definition, in light of the decisions of the Court of Appeals.

Because of these recent developments, we believe that the proper approach in the instant case is to remand the matter to the MERC so that the commission may apply its new definitions to the challenged positions in this case, i.e., assessor, clerk, treasurer, police chief, and fire chief.

VII

For the reasons given, and in lieu of granting leave to appeal, we vacate the judgment of the Court of Appeals and remand this matter to the Michigan Employment Relations Commission for further proceedings consistent with this opinion. MCR 7.302(F)(1).

BRICKLEY, C.J., and BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. (*dissenting*). I dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the jurisprudentially significant issue, decided without oral argument or plenary consideration in the majority opinion.

The determination of the majority of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. The majority's decision to peremptorily reverse the decision of the Court of Appeals belittles its efforts, in the disposition of this case, as reflected in its carefully written published opinion, and deprives the Grandville Municipal Executive Association and its counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Today's peremptory opinion reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is an opportunity to educate the justices concerning the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is set-

tled and factual assessment is not required.[1] In the instant case, factual and legal assessment is required, as clearly appears from the extensive discussion in

---

[1] *People v Wright*, 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed*, 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co*, 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little*, 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn*, 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc*, 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co*, 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia*, 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo*, 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens*, 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey*, 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm*, 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp*, 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority*, 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston)*, 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan*, 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm*, 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc)*, 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA*, 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People v Waleed*, 441 Mich 902, 902-903 (1992) (LEVIN, J., dissenting); *People v Hardison*, 441 Mich 913, 914-916 (1993) (LEVIN, J., dissenting); *People v Justice*, 441 Mich 916, 917-919 (1993) (LEVIN, J., dissenting); *People v LaClear*, 442 Mich 867, 867-871 (1993) (LEVIN, J., dissenting); *Auto-Owners Ins Co v City of Clare*, 446 Mich 1, 16-18; 521 NW2d 480 (1994) (LEVIN, J., dissenting); *Weisgerber v Ann Arbor Center for the Family*, 447 Mich 963, 964-969 (1994) (LEVIN, J., dissenting); *Howard v White*, 447 Mich 395, 405-410; 523 NW2d 220 (1994) (LEVIN, J., dissenting).

See *Schweiker v Hansen*, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt*, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa*, 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

the majority opinion. Peremptory disposition is not appropriate.

CAVANAGH, J., concurred with LEVIN, J.