# STATE OF MICHIGAN

# COURT OF APPEALS

TEAMSTERS LOCAL 214,

Respondent-Appellee,

v

PAULINE BEUTLER,

Charging Party-Appellant.

UNPUBLISHED
August 10, 2017

No. 330854
MERC
LC No. 00-000039

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Charging party, a bus driver for the Livingston Educational Service Agency, appeals as of right from the decision of the Michigan Employment Relations Commission (MERC) rejecting her charge that respondent, her former union, violated her statutory right to avoid supporting or otherwise affiliating with a union by refusing to give immediate effect to her announced intention to discontinue financially supporting the union. We affirm.

This case arose as the result of legislative amendments to the public employment relations act (PERA), MCL 423.201 *et seq.*, rendering Michigan a so-called right-to-work state. This Court summarized the recent amendments as follows:

> Section 9(1)(a) of PERA, MCL 423.209(1)(a), establishes that public employees may organize themselves into collective bargaining units. 2012 PA 349, effective March 28, 2013, added § 9(1)(b), establishing that public employees may refrain from such activity. 2012 PA 349 also added subsection (2), which prohibits any person from resorting to coercion to compel a public employee to become or remain a member of a labor organization, to compel a public employee to refrain from doing so, or to compel a public employee to support such an organization financially. Section 10(1)(a) of PERA, MCL 423.210(1)(a), in turn prohibits a public employer from interfering with, restraining, or coercing public employees "in the exercise of their rights guaranteed in section 9." Section 10(2)(a) imposes the same prohibition on labor organizations while adding that it "does not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership." 2012 PA 349 added subsection (3), which, but for exceptions not applicable here,

-1-

prohibits requiring "an individual . . . as a condition of obtaining or continuing public employment" to "[b]ecome or remain a member of a labor organization or bargaining representative," to support such an organization financially, or to "[r]efrain or resign from membership in, voluntary affiliation with, or voluntary financial support of a labor organization or bargaining representative." MCL 423.210(3). 2012 PA 53, effective March 16, 2012, amended § 10 to prohibit public school employers from using "public school resources to assist a labor organization in collecting dues or service fees from wages of public school employees" except in connection with collective bargaining agreements already in effect when that provision became operative. MCL 423.210(1)(b). [*Saginaw Ed Ass'n v Eady-Miskiewicz*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket Nos. 329419 *et al*.); slip op at 4-5.]

In several of the consolidated cases comprised by *Saginaw Ed Ass'n*, the MERC had concluded that the membership agreements at issue, because they merely reflected internal rules limiting resignation opportunities to a specified month each year, did not clearly, explicitly, and unmistakably set forth the obligation to continue financially supporting the unions, regardless of union membership, until the next resignation window came about. Accordingly, the MERC held that those agreements did not constitute waivers of the charging parties' right to discontinue financially supporting their unions at will. In affirming those results, this Court held as follows:

> The MERC correctly recognized that waivers of statutory rights must be clear and unambiguous. We further agree with the MERC that merely joining or remaining a member of a union with a bylaw or constitutional provision purporting to limit the right to resign does not constitute a clear, explicit and unmistakable waiver of the statutory right to refrain from union affiliation. The MERC also correctly differentiated, for present purposes, membership in a union from financial support of a union.

> . . . The union agreements . . . at issue did not define "membership" as the obligation to pay dues or fees, or otherwise specify that restrictions set forth on disassociation opportunities were limited to the latter. For that reason, and because the restrictions on resignation opportunities as set forth merely reflected general union policy, we agree with the MERC that the charging parties below did not clearly, explicitly, and unambiguously waive their right to discontinue their financial support of, or other forms of affiliation with, their respective respondent unions.

> Accordingly, we conclude that the MERC correctly held that the right to discontinue financially supporting a union may be waived if the waiver is clear, explicit, and unmistakable, but that the agreements upon which respondents rely did not constitute such explicit and unmistakable waivers of the charging parties' statutory right to refrain from union membership at any time. [*Saginaw Ed Ass'n*, ___ Mich App at ___; slip op at 16-17 (citations omitted).]

At issue in this case is whether the MERC correctly identified the contract between the instant parties as differing from those at issue in *Saginaw Ed Ass'n* in actually satisfying the requirements for a clear, explicit, and unmistakable waiver of the statutory right to discontinue union support at will.

The MERC's "findings of fact are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Grandville Muni Executive Ass'n v City of Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996). This Court reviews de novo questions of law, such as the proper interpretation of a statute. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 97; 754 NW2d 259 (2008). When called upon to review an administrative agency's construction of a statute, we give "respectful consideration" to an agency's statutory interpretations, but are not bound by these interpretations and an agency's construction of a statute may not conflict with the plain language of the statute. *Id.* at 103, 111-112.

Upon joining the union, charging party signed an application for membership and authorization for assignment that recited that it was "voluntary and . . . not conditioned on . . . present or future membership in the Union." The application and assignment authorized charging party's employer to deduct her monthly union dues from her wages, and further provided as follows:

> This authorization and assignment shall be irrevocable for the term of the applicable contract between the union and the employer or for one year, whichever is the lesser, and shall automatically renew itself for successive yearly or applicable contract periods thereafter, whichever is lesser, unless I give written notice to the company and the union at least sixty (60) days, but not more than seventy-five (75) days before any periodic renewal date of this authorization and assignment of my desire to revoke same.

The collective bargaining agreement then in effect expired on June 30, 2013, in anticipation of which respondent and the employer entered into a new collective bargaining agreement, which, in recognition of the enactment of 2012 PA 53 and 2012 PA 349, included no union security provision or authorization for the employer to deduct union dues or fees from employees' wages.

In September 2013 charging party sent a letter to respondent union's president stating her desire to exercise her new statutory right to refrain from union activities, to which the union responded with a letter asserting that the authorization and assignment charging party signed was "a separate independent contract . . . which supersedes Public Act 349," and did not now allow her to revoke her "financial obligation at this time." The MERC held that charging party's letter was sufficient to effect her resignation upon its receipt, but that charging party's obligation to continue paying union dues extended until the next resignation window. The MERC distinguished this case from those involved in *Saginaw Ed Ass'n* on the ground that the latter concerned "employees whose financial obligation to support their union was the quid pro quo for membership in the union," while "[i]n this matter . . . Charging Party's dues obligation was not necessarily tied to her membership in the Union," because charging party "entered into a dues deduction agreement that obligated her to pay dues to the Union without regard to her union membership."

-3-

The MERC observed that, where an employee has agreed to pay union dues and has signed a dues deduction authorization, the employee has assigned to the union a portion of her wages equal to the amount of her periodic dues obligation, the duration of which "is dependent upon the lawful terms of her agreement with that union . . ." The MERC elaborated as follows:

> Act 53 changed the obligations of public school employers with respect to the deduction of dues and agency fees from employee paychecks. Public school employers may no longer agree to withhold money from the paychecks of their employees for the purpose of providing such funds to unions in payment of the employees' dues or agency fee obligations. However, Act 53 did not alter the obligation of employees to pay dues pursuant to a lawful agreement. If a public school employee has a lawful obligation to pay union dues, that obligation was not changed by Act 53.

The first collective bargaining agreement between respondent and the employer expired on June 30, 2013. On, approximately, May 2, 2013, respondent and the employer entered into a new collective bargaining agreement that would become effective on July 1, 2013 (and took into consideration the passage of the "right to work" legislation). The dues deduction agreement signed by charging party on September 21, 2011, by its terms, would automatically renew when the new 2013 collective bargaining agreement went into effect. The dues deduction agreement further provided that charging party could, if she wanted to revoke her dues deduction, provide written notice to the company and union at least 60 but not more than 75 days before the renewal of the collective bargaining agreement between the union and the employer. There is no indication that charging party attempted in any way to terminate her obligation to pay dues prior to or at the time surrounding the implementation of the new collective bargaining agreement. Because the dues deduction agreement renewed when the new collective bargaining agreement took effect, it was essentially a new and distinct contract (see, e.g. *21st century Premier Ins Co v Zufelt*, 315 Mich App 437, 443-444; 889 NW2d 759 (2016)) and charging party, by failing to take any action within the timeframe set forth in the dues deduction agreement, waived her right to discontinue paying her dues at any point other than the timeframe set forth in that renewed dues deduction agreement. In sum, we conclude that the MERC correctly recognized in this instance that the membership agreement at issue — having specified an "assignment" that is "irrevocable for the term of the applicable contract" and would "automatically renew itself for successive yearly or applicable contract periods" but for submission of revocation in the manner set forth—clearly, explicitly, and unmistakably set forth an obligation to pay union dues for a specified period, regardless of charging party's membership status, and thus constituted a binding waiver of her right to discontinue her financial support of the union at will.

Moreover, although the precipitating event giving rise to charging party's September 2013 letter, this case in general, and her argument on appeal was the passing of the "right to work" legislation, the dues deduction agreement is, above all else, a contract — separate and distinct from the collective bargaining agreement. Our Supreme Court has noted, "[t]he general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Rory v Contl Ins Co*, 473 Mich 457, 468; 703 NW2d 23, 30 (2005), quoting *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002). Considering that, as the MERC stated, "Act 53 did not

alter the obligation of employees to pay dues pursuant to a lawful agreement" and there has been no meritorious argument made with respect to the unlawfulness of the dues deduction agreement, basic contract principles would require this Court to enforce that agreement.

Finally, charging party suggests that the statutory prohibition of continued use of the check-off card methodology for collecting union dues itself established a union member's right to discontinue paying union dues at will. The legislation doing so, however, related to only public school employers' use of "public school resources to assist a labor organization in collecting dues or service fees from wages of public school employees," MCL 423.210(1)(b), not to the continuing validity of contractual obligations to pay dues for specified periods by what lawful means remain.

Affirmed.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello